In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00036-CV


______________________________




BROOKSHIRE GROCERY COMPANY, Appellant



V.



BARBARA GOSS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


 Trial Court No. 2003-481




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 This is an appeal from a judgment in favor of an employee against an employer, a
nonsubscriber within the Texas Workers' Compensation Act, in which a jury awarded employee,
Barbara Goss, $726,078.50 in damages for physical pain and mental anguish, loss of earning
capacity, physical impairment, and medical expenses in connection with an accident on the
employer's premises.

I. FACTUAL AND PROCEDURAL HISTORY

 Goss began working at Brookshire Grocery Company in Quitman in 1999. She worked for
a while in the Mineola store, but had returned to the Quitman store and, in November 2002, was
working in the deli section of the store. Shortly before Thanksgiving 2002, Brookshire's employees
had been taking orders for frozen turkey dinners for customers. To keep them at the proper
temperature, the employees stacked the dinners on a lowboy cart and placed the cart in the deli cooler
while the market freezer was being rearranged. 

 A lowboy cart is used to move inventory and stands about ten inches off the ground. It is
approximately five feet long, and about two-and-one-half feet wide. A lowboy cart has a handle on
one end and can only be maneuvered using this handle. This lowboy was loaded with Thanksgiving
foods which were boxed and stacked three to four boxes high, leaving less room in the cooler for
employees to move around. Goss had to go into the cooler to get some frozen potato logs to cook
and put in the deli. There were also other carts--regular shopping buggies--in the cooler at the
time. 

 Goss admitted she noticed the lowboy cart when she entered the cooler November 23, 2002. 
She stepped over the corner of the lowboy to get over to the area where the potato logs were located. 
On obtaining the necessary items, she turned around, hit her shin on the lowboy, reached around to
grab a shelf to keep from falling, and "pulled [her] back." In her petition, she explained similarly
that she tripped over the lowboy and then "twist[ed] as she fell, injuring her knee and back."

 Goss immediately went to the hospital. She filled out an accident report two days later,
listing the "cart in cooler" as the cause of her injury. Her supervisor also filled out a report in
connection with the accident, stating that "Barbara turned around and fell over the blue stock cart."

 When her symptoms persisted, Goss consulted a physician's assistant as directed by
Brookshire. He gave her pain medication and ordered x-rays. Unsatisfied with the results of that
treatment, she then went to the risk manager for Brookshire, who sent Goss to Dr. Michael Russell,
a board-certified orthopedic surgeon in Tyler. Goss still did not feel better and told Brookshire that
she wanted to go to another doctor. Brookshire then sent Goss to Dr. Barbara Davidson, a physical
medicine and rehabilitation specialist in Tyler. Davidson gave Goss several epidural injections to
treat the pain. Goss again wanted to go to another doctor. Brookshire sent her to Dr. Paul Detwiler
and Dr. McMasters. Goss was also dissatisfied with the results of their treatment. 

 Not satisfied with Brookshire's overall medical direction, Goss decided to go to Dr. Phillip
Williams in Dallas. Williams, not an "approved" doctor according to Brookshire, acknowledged
Goss' pain and sent her to another doctor. Still feeling worse, Goss then went to Dr. Virgil Medlock,
who referred her to the Cooper Clinic in Dallas and to pain specialist Dr. Kenneth Reed, who treated
her with an epidural injection. Finally, on Reed's recommendation, Goss went to Dr. Richard
Weiner, who implanted a permanent neurostimulator in Goss to control her pain. By all accounts,
she is doing much better. Reed explained that Goss had a very successful response to the
neurostimulator.

 Goss filed her original petition August 27, 2003, alleging both ordinary negligence and
premises liability. Ultimately, the jury returned a verdict in favor of Goss. On December 9, 2004,
the trial court signed a judgment in accordance with the verdict. On December 10, 2004, the trial
court overruled Brookshire's motion seeking judgment notwithstanding the verdict or, alternatively,
a new trial. On January 7, 2005, Brookshire filed an amended motion for new trial. On February 2,
2005, the trial court signed an order granting Brookshire's amended motion for new trial. That order
was set aside, however, after this Court conditionally granted a writ of mandamus compelling such. 

II. SUMMARY OF ARGUMENTS

 Brookshire brings this appeal in terms of the following issues:

 Duty: Brookshire maintains that Goss failed to offer evidence that Brookshire owed her
duties relating to a safe workplace. Brookshire argues Goss was required to show that the task she
was performing was unusual or posed a threat of injury or that her work involved something complex
or hazardous.

 Proximate Cause: Brookshire argues Goss failed to present legally and factually sufficient
evidence of both the cause in fact and foreseeability elements of proximate cause.

 Damages: Brookshire contends Goss failed to present sufficient evidence to sustain the jury's
award of future loss of earning capacity. In fact, Brookshire argues, the evidence established that
she had responded very well to the neurostimulator. Brookshire also contends there was insufficient
evidence to support Dr. Willingham's projection that Goss would require more than $400,000.00 in
future medical care. Additionally, Brookshire argues that Goss failed to provide sufficient evidence
that her past medical bills of between $95,000.00 and $96,000.00 were reasonable or necessary.

 Charge Error: Finally, Brookshire argues that the trial court committed reversible error in
refusing to give the appropriate premises liability instruction requested by Brookshire.

III. EMPLOYER'S DUTIES GENERALLY

 An employer's nondelegable and continuous duties to its employees include: providing a safe
place in which to work and to furnish reasonably safe instrumentalities, warning employees of the
hazards of their employment, and supervising their activities. See Farley v. M M Cattle Co., 529
S.W.2d 751, 754 (Tex. 1975); see also Forrest v. Vital Earth Res., 120 S.W.3d 480, 489 (Tex.
App.--Texarkana 2003, pet. denied); Nat'l Convenience Stores, Inc. v. Matherne, 987 S.W.2d 145,
149 (Tex. App.--Houston [14th Dist.] 1999, no pet.). An employer also has a duty to provide rules
and regulations for the safety of employees and to select careful and competent fellow servants. See
Burk Royalty Co. v. Walls, 616 S.W.2d 911, 923-24 (Tex. 1981).

 Concentrating for the moment on one of those duties--the duty to provide a safe workplace,
we examine premises liability and an employer's specific duties. See Leitch v. Hornsby, 935 S.W.2d
114, 117 (Tex. 1996). Coupled with the well-established basic principle that employees are treated
as invitees, the safe workplace duty inevitably leads to notions of premises liability. See Hernandez
v. Heldenfels, 374 S.W.2d 196, 197 (Tex. 1963); Moore v. J. Weingarten, Inc., 523 S.W.2d 445, 447
(Tex. Civ. App.--Beaumont 1975, writ ref'd n.r.e.). 

 In an action against a nonsubscribing employer, a plaintiff must prove the negligence of the
employer. Tex. Lab. Code Ann. § 406.033(d) (Vernon 2006); see Werner v. Colwell, 909 S.W.2d
866, 868 (Tex. 1995). The elements of a negligence cause of action are: (1) the defendant owed a
particular duty to the plaintiff; (2) the defendant breached that legal duty; and (3) the breach of that
legal duty proximately caused the plaintiff's injury. See Van Horn v. Chambers, 970 S.W.2d 542,
544 (Tex. 1998); Skiles v. Jack in the Box, Inc., 170 S.W.3d 173, 179 (Tex. App.--Dallas 2005, no
pet.).

IV. LEGAL AND FACTUAL SUFFICIENCY STANDARDS

 A. Legal Sufficiency Standard of Review

 In reviewing a challenge to the legal sufficiency of the evidence, this Court must consider
all of the evidence in a light most favorable to the party in whose favor the verdict was rendered. 
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). The final test for legal
sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

 B. Factual Sufficiency Points of Error Not Preserved

 To preserve a challenge to the factual sufficiency of the evidence for appellate review, the
party must file a motion for new trial in the trial court. Tex. R. Civ. P. 324(b)(2), (3); In re B.K.D.,
131 S.W.3d 10, 15 (Tex. App.--Fort Worth 2003, pet. denied). We have considered Brookshire's
second motion for new trial as an amended motion for new trial. See In re Goss, 160 S.W.3d 288,
291 (Tex. App.--Texarkana 2005, orig. proceeding). The Texas Supreme Court explains the Texas
Rules of Civil Procedure relating to amended motions for new trial:

 A party may file an amended motion for new trial without leave of court
before any earlier motion for new trial is overruled and within thirty days after the
judgment. Tex. R. Civ. P. 329b(b). The court may not enlarge the period for taking
any action under the rules relating to new trials except as the rules allow. Tex. R.
Civ. P. 5.

Moritz v. Preiss, 121 S.W.3d 715, 719 (Tex. 2003); see Tex. R. Civ. P. 329b.

 Brookshire failed to preserve error with respect to the arguments regarding factual
sufficiency. Those points were not raised in Brookshire's motion for j.n.o.v. (alternatively for new
trial). It was only in Brookshire's amended motion for new trial, filed after the first motion was
overruled (and granted after the trial court's plenary power expired), that it raised factual sufficiency
points. 

 Citing the trial court's comments regarding Brookshire's arguments, (1)
 we addressed the
timeliness of the amended motion for new trial, but did not need to definitively conclude the trial
court impliedly granted permission to file an amended motion for new trial: 

 Arguably, the trial court did at least impliedly grant permission to file an
amended motion. Assuming that such permission can be granted by implication
under these facts, the remaining question is whether it would serve to extend the
plenary authority of the trial court. The Texas Supreme Court has held that it does
not.


Goss, 160 S.W.3d at 291. Brookshire has not supplied any authority, and we have found none, that
the trial court may, by implication, extend the time for filing a motion for new trial. We, therefore,
find the factual sufficiency issues have not been preserved for appeal. 

V. LEGAL SUFFICIENCY OF EVIDENCE OF DUTY

 A. Applicable Law

 Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty
owed to him or her by the defendant to establish liability in tort. See Kroger Co. v. Elwood, 793
S.W.2d 794 (Tex. 2006). It is well established that an employer does have a duty to provide a safe
workplace. See Leitch, 935 S.W.2d at 117; Werner, 909 S.W.2d at 869. This duty includes the duty
to provide rules and regulations, proper warnings to employees regarding the hazards of their
employment, and adequate supervision of employees. Farley, 529 S.W.2d at 754. 

 However, the employee must present evidence that the task at issue was unusual or posed a
threat of injury. See Werner, 909 S.W.2d at 869. An employer has no duty to adopt safety rules
where its business is neither complex nor hazardous or where dangers incident to work are obvious
or are of common knowledge and fully understood by the employee. See Matherne, 987 S.W.2d at
149.

 B. Legally Sufficient Evidence that the Presence of the Cart in the Cooler Posed a
Threat of Injury


 Goss presented evidence of Brookshire's safety inspection checklist that identified the lowboy
cart as a "slipping/tripping hazard" when left on the sales floor area. The detailed safety inspection
checklist Brookshire used states that the sales floor area (all departments) should be "free of debris,
obstructions, and slipping/tripping hazards such as merchandise, stocking carts." The checklist
further notes that, in the wareroom and receiving areas, tripping hazards should be eliminated and
gives some examples, one of which is "stocking cards," which Brookshire agrees is a typographical
error and is understood to mean "carts." In both of these, the stocking cart is specifically identified
as a potential slipping/tripping hazard that should be eliminated. However, Brookshire attempted
to minimize this evidence through the testimony of Eddie Crawford, Brookshire's corporate
representative, who testified that a lowboy presents a safety hazard only to customers who may be
distracted by looking for items on a shelf and that it only presents a safety hazard when empty and
unattended. Crawford testified there was always some type of cart in the cooler, including regular
shopping carts. He acknowledged the fact that an empty lowboy cart posed a tripping hazard, but
did not believe a loaded lowboy posed the same hazard because of its increased visibility. He
emphasized that an empty lowboy was a tripping hazard, but "[n]ot to our workers," who, according
to Crawford, are trained on how to safely use lowboys. However, according to Crawford's own
testimony, employees are trained on the safe use of carts only when they are on the sales floor (as
required by the safety inspection checklist). Crawford thought the lowboy carts were a potential
hazard only if they were empty and unattended, but acknowledged the safety inspection checklist did
not specify that the stock carts posed a tripping hazard only when they were empty and unattended. 

 Goss' safety expert, Robert Firmbach, testified that, while lowboys are commonly used in the
industry, an unattended lowboy is a safety hazard due to its low stature and limited maneuverability. 
He further testified that he could not maneuver this particular loaded cart while it was inside the deli
cooler. When placed in the position where the evidence showed the cart to have been located, it
could not be moved straight out toward the doorway and, when attempting to move it another
direction, it would run into the bins behind it. He stated, "[Y]ou just couldn't just move it out of the
way."

 Angelina Lopez, the deli manager, testified that, in the ten years she had worked at
Brookshire, she had seen such a lowboy in the deli cooler only three times. Goss' coworker Wanda
Hall added that lowboys were only placed in the cooler around the holidays to store holiday foods. 

 Goss alleged that Brookshire was negligent in failing to enact policies and procedures "with
respect to prohibiting the leaving of such carts unattended in the deli cooler." As Goss points out,
the reason the store treats the lowboy as a tripping hazard with respect to customers is that the
customer may be looking for items on shelves on the sales floor of the store; Goss, having to look
in the cooler shelves for items, was in that way much like a customer. Firmbach testified that a
worker going into the deli cooler is "looking for a product" and is "[j]ust like someone that's out
shopping." The jury could have inferred that the carts were a hazard in the deli cooler just as they
were in the general shopping areas. 

 Brookshire argues there are always carts in the cooler that hold the salad ingredients for the
deli. Therefore, Brookshire reasons, the presence of the lowboy is not a hazard and, therefore,
Brookshire owes no duty with respect to the lowboy in the cooler. To that, we note that the lowboy
is different in size, structure, and function than a regular grocery cart. In fact, the lowboy cart can
only be moved from one end, meaning the cart was stationary on the end at which Goss bumped it. 
In other words, the cart would not have moved in response to her bumping into it as would a regular
grocery cart, which is also much smaller, much taller, more visible, and, by all accounts, much more
commonly used in the deli than lowboys, which Brookshire has acknowledged, in some settings, are
"tripping hazards." 

 Brookshire argues Goss noticed the cart on entering the cooler and should have known not
to bump into it. Brookshire's argument is very close to sounding in terms of open and obvious risk,
a defense flatly rejected by the Texas Supreme Court in Sears, Roebuck & Co. v. Robinson, 154 Tex.
336, 280 S.W.2d 238, 240 (1955). We likewise reject Brookshire's contentions. A defense that the
danger was open and obvious is treated as one based on assumption of risk, a defense that Section
406.033 of the Texas Labor Code specifically denies Brookshire in these circumstances. (2) Tex. Lab.
Code Ann. § 406.033 (Vernon 2006). Even if Goss was contributorily negligent in this incident,
as a nonsubscriber to the workers' compensation statute, Brookshire cannot rely on that as a defense.

 After considering all of the evidence in the light most favorable to Goss, we find that the
evidence at trial would enable reasonable and fair-minded jurors to reach the verdict as found here. 
Goss presented legally sufficient evidence that Brookshire had a duty to enact policies and
procedures regarding the location and use of the lowboy cart, and a duty to warn her of the dangers
associated with these carts. 

VI. LEGAL SUFFICIENCY OF EVIDENCE ON PROXIMATE CAUSE

 Proximate cause consists of both cause in fact and foreseeability. See Forrest, 120 S.W.3d
at 490. Brookshire contends Goss failed to present legally sufficient evidence as to each element.

 A. Cause in Fact

 Cause in fact means the defendant's act or omission was a substantial factor in bringing about
the injury, which would not otherwise have occurred. See Union Pump Co. v. Allbritton, 898 S.W.2d
773, 775 (Tex. 1995); Forrest, 120 S.W.3d at 490. The cause in fact element of proximate cause
is met when there is some evidence the act or omission was a substantial factor in bringing about
injury, without which the harm would not have occurred. See Forrest, 120 S.W.3d at 490.

 Dr. Reed summarized that the predominant findings suggested Goss suffered from nerve
injury. Reed unequivocally attributes Goss' condition(s) to the accident in the deli cooler. (3) Even if
Goss did have a little back pain, Reed explains, she was "going along fine" until that incident,
leaving "no question" that the incident caused the nerve injury. 

 B. Foreseeability

 Foreseeability requires that the actor, as a person of ordinary intelligence, would have
anticipated the danger that the actor's negligent act created for others. See City of Gladewater v.
Pike, 727 S.W.2d 514, 517 (Tex. 1987). Foreseeability, in the context of causation, asks whether
an injury might reasonably have been contemplated because of the defendant's conduct. Id. at 517. 
Foreseeability does not permit simply viewing the facts in retrospect and theorizing an extraordinary
sequence of events by which the defendant's conduct caused the injury. Id. Rather, the question
involves a practical inquiry based on "common experience applied to human conduct." Id. at 518.
Foreseeability requires only that the general danger, not the exact sequence of events that produced
the harm, be foreseeable. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Forrest, 120 S.W.3d
at 490.

 Brookshire argues that Goss failed to present legally sufficient evidence that her accident was
a foreseeable one. That is, Brookshire argues Goss failed to show how someone bumping into the
cart in plain view and trying to catch himself or herself and suffering back injury as a result is a
foreseeable accident. However, Goss was not required to prove knowledge of one specific hazard,
only the general danger. See Walker, 924 S.W.2d at 377; Corbin v. Safeway Stores, Inc., 648 S.W.2d
292, 296 (Tex. 1983). So, the burden Goss had to satisfy was the burden of showing that Brookshire
knew the lowboy posed a general safety risk.

 Looking again at the testimony of Crawford, Firmbach, and Brookshire's own safety
inspection checklist, we conclude that the risk of someone tripping over or bumping into the low
loading bed of a large lowboy cart was a risk that Brookshire acknowledged. Brookshire attempts
to distinguish the risk posed by a loaded lowboy and an empty one, an argument that is not
persuasive in light of the evidence favoring the jury's finding that the accident was a foreseeable one.

VII. CHARGE ERROR--Premises Liability and Instructions

 Brookshire argues the trial court erred by refusing to include jury instructions on the Corbin
elements of premises liability. See Corbin, 648 S.W.2d at 296. Goss alleged both ordinary
negligence and premises liability. Brookshire argues that, while not all workplace injuries will sound
in terms of premises liability, this particular set of facts does.

 To succeed in a premises liability suit, an invitee plaintiff must prove the following four
elements: (1) actual or constructive knowledge of some condition on the premises by the
owner/operator; (2) that the condition posed an unreasonable risk of harm; (3) that the
owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) that the
owner/operator's failure to use such care proximately caused the plaintiff's injuries. See Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998); Corbin, 648 S.W.2d at 296. These
elements address the particular standard of care owed by a premises owner or occupier. (4)

 The trial court has great discretion in submitting the jury charge. Tex. Dep't of Transp. v.
Ramming, 861 S.W.2d 460, 463 (Tex. App.--Houston [14th Dist.] 1993, writ denied); see also Tex.
R. Civ. P. 277. This discretion is subject to the requirement that the questions submitted must
control the disposition of the case, be raised by the pleadings and evidence, and properly submit the
disputed issues for the jury's deliberation. Ramming, 861 S.W.2d at 463. The litigants are entitled
to have controlling issues of fact submitted to the jury if they are properly pleaded and supported by
some evidence. See Tex. R. Civ. P. 278; Triplex Commc'ns, Inc. v. Riley, 900 S.W.2d 716, 718
(Tex. 1995); Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 34 (Tex. App.--Tyler 2003, pet.
denied). A simple negligence question, unaccompanied by the Corbin elements as instructions or
definitions, cannot support a recovery in a premises defect case. See Keetch v. Kroger Co., 845
S.W.2d 262, 266 (Tex. 1992). 

 Brookshire acknowledges that Goss pled both ordinary negligence and a premises liability
form of negligence. However, Brookshire maintains that the evidence raised only a premises liability
claim and did not support the submission of an ordinary negligence claim. Consequently, Brookshire
moved the court to submit to the jury the traditional premises liability question, rather than a
question on ordinary negligence. Since the trial court failed to do so, Brookshire claims Rule 278
of the Texas Rules of Civil Procedure was violated, which caused an improper verdict to be returned. 
We disagree.

 Before the submission of the jury charge, Goss elected to submit only the general negligence
form of the cause of action and urged that the premises liability form of negligence should not be
submitted to the jury. In essence, Goss abandoned pursuit of any action that she might have based
on premises liability and placed her entire theory of recovery on the form of negligence involving 
a breach of a duty that an employer owes to an employee. The jury found in her favor on that issue. 
Brookshire now argues for reversal based on the improper theory having been submitted to the jury. 
However, we must test the validity of the recovery for general negligence on its own merits. Either
Goss established the elements of her master-servant cause of action against Brookshire for its
negligence or she did not. The fact that she may have another theory of negligence she abandoned
at trial is of no consequence. Theoretically, Goss could have recovered on two alternative
theories--(1) that Brookshire failed to provide a reasonably safe place to work to her as an employee
and (2) that Brookshire knew or reasonably should have known of an unreasonable risk of harm and
failed to exercise ordinary care to protect her by failing to adequately warn her and failed to make
the condition reasonably safe. While the elements of these separate actions for negligence overlap,
the Texas Supreme Court has recognized the distinction between them and admonished that the two
fields of law (landowners-invitee and master-servant) are entirely separate and should be kept so. Some years ago, the Texas Supreme Court stated its position on the similarities and
distinctions between premises liability law and the law governing an employer's duties to its
employees. See Robinson, 280 S.W.2d at 240. After an employee sued for injuries he sustained on
the job, Sears requested a jury instruction regarding the open and obvious nature of the hazard and
framed the issue concerning an open and obvious hazard as one going to an essential element of duty
in the employee's cause of action. The Texas Supreme Court interpreted the underlying basis for this
open-and-obvious-hazard argument as one sounding in assumption of risk. (5) Since the Legislature
had clearly expressed its intent to abrogate a nonsubscribing employer's common-law defense of
assumption of risk, the court held that the open-and-obvious instruction was not necessary since
Sears could not assert the no-duty/open-and-obvious-hazard position in response to its employee's
negligence action. Robinson re-emphasized that employees were invitees, but strongly cautioned
against treating the two distinct areas of the law as one:

 The two fields of law (landowners-invitee and master-servant), are entirely separate,
and they should be kept so. While the nature of the duty of the landowner to use
reasonable care to make his premises reasonably safe for the use of his invitees may,
in all material respects, be identical with the nature of the duty of the master to use
reasonable care to provide his servant with a reasonably safe place to work, we see
no sound reason for extending the no-duty concept of denying liability from the
landowner-invitee field of the law to the master-servant field.

Id.

 Perhaps the clearest statement against merging these premises liability duties and an
employer's duties to its employees comes from the Corpus Christi court:

 By cross-point, appellees argue that this case sounded in premises liability, and that
Caballero should have pleaded and proved a premises liability case and submitted it
to the jury with appropriate instructions. We disagree with appellees' contention that
this case sounded solely in premises liability.

 Caballero elected to bring this action as a negligence case against his employer, and
this cause of action was supported by the facts and applicable law. Caballero, as an
employee of a workers' compensation nonsubscriber, brought a negligence cause of
action against his employer for injuries sustained in the course of employment. Such
a cause of action is clearly established by Texas law. See Werner, 909 S.W.2d at
868; Farley, 529 S.W.2d at 754; Burk Royalty, 616 S.W.2d at 923-24; National
Convenience Stores, 987 S.W.2d at 149. Moreover, as discussed herein, Caballero's
allegations against appellees were supported by the evidence. We conclude that
appellees have failed to present grounds sufficient to vitiate the jury's verdict or to
prevent affirming the judgment had one been entered on the verdict. See Tex. R.
App. P. 38.2(b)(1); Tex. R. Civ. P. 324(c). 


Caballero v. Licciardello, No. 13-98-577-CV, 2001 Tex. App. LEXIS 3283, at *11-12 (Tex.
App.--Corpus Christi May 17, 2001, pet. denied) (not designated for publication).

 If a plaintiff pleads multiple theories of recovery for a single injury and does not elect its
remedies before the trial court proceeds to judgment, the trial court should render the judgment
offering the greatest recovery. Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361, 367 (Tex.
1987). If the trial court does not do so, the appellate court must use the findings awarding the
greatest theory of recovery and render judgment accordingly. Citizens Nat'l Bank v. Allen Rae Invs.,
Inc., 142 S.W.3d 459, 474-75 (Tex. App.--Fort Worth 2004, no pet.). Here, Goss elected her
remedy before the issues were submitted to the jury. 

 Brookshire is not denied its right to complain of the finding of general negligence. While
Brookshire is not authorized to select which theory Goss chooses to present to the jury, Brookshire
can argue that Goss chose the wrong one. In other words, if the pleadings and evidence do not raise
an issue that Brookshire's acts or omissions, as the employer of Goss, constituted negligence by
failing to provide Goss with a reasonably safe place to work, error is presented even if the evidence
properly raised the issue of premises liability. We overrule Brookshire's point of error that the jury
was improperly instructed.

VIII. LEGAL SUFFICIENCY OF THE JURY'S DAMAGES AWARD

 Brookshire argues that some of the damages found by the jury are not supported by
competent evidence. We must measure each case by its own facts and give considerable discretion
and latitude to the jury's award. See Weidner v. Sanchez, 14 S.W.3d 353, 372 (Tex. App.--Houston
[14th Dist.] 2000, no pet.). In considering and weighing the evidence, we defer to the fact-finder as
the final determiner of the credibility of witnesses and the weight to give their testimony, and set
aside only where the record clearly indicates that the award was based on passion, prejudice, or
improper motive, or is so excessive as to shock the conscience. See SunBridge Healthcare Corp.
v. Penny, 160 S.W.3d 230, 247 (Tex. App.--Texarkana 2005, no pet.). As long as sufficient
probative evidence exists to support the jury's verdict, we will not substitute our judgment for that
of the jury. See Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).

 A. Future Physical Pain and Mental Anguish--$25,000.00

 The process of awarding damages for amorphous injuries such as mental anguish or pain and
suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary
loss. Dollison v. Hayes, 79 S.W.3d 246, 249 (Tex. App.--Texarkana 2002, no pet.). Because there
are no objective guidelines to assess the monetary equivalent to such injuries, the jury is given a great
deal of discretion in awarding an amount of damages it deems appropriate. See Texarkana Mem'l
Hosp., Inc. v. Murdock, 946 S.W.2d 836, 841 (Tex. 1997). 

 There is conflicting evidence on the issue of the level of pain Goss will experience. 
Dr. Reed, her witness, explained that Goss had a remarkable response to the neurostimulator and
estimated that the procedure blocked ninety percent of her pain most of the time. He added that Goss
would become stronger and more mobile over time and that, once her pain is under control, Goss
will "get back going in life." According to Goss, she still experiences pain, however, especially
exerting herself even slightly. Reed's testimony also supports the notion that she will continue to
experience pain as a result of the injury. 

 Having examined the evidence regarding her future pain and mental anguish, we conclude
the evidence is legally sufficient to support the relatively modest award of $25,000.00 for pain and
mental anguish. Again, the jury is afforded a great deal of deference with respect to assessing such
damages, especially when it is so difficult to assign a monetary value to the damages. 

 B. Loss of Future Earning Capacity--$78,000.00

 Recently, this Court explained that, although proof of loss of earning capacity is uncertain
and must be left largely to the discretion of the jury, "earning capacity has been defined as the 'ability
and fitness to work in gainful employment for any type of remuneration, including salary,
commissions, and other benefits, whether or not the person is actually employed.'" See Pilgrim's
Pride Corp. v. Smoak, 134 S.W.3d 880, 899 (Tex. App.--Texarkana 2004, pet. denied) (citing
Baccus v. Am. States Ins. Co., 865 S.W.2d 587, 588 (Tex. App.--Fort Worth 1993, no writ)). 
Factors to consider when determining whether a person has experienced an impairment in future
earning capacity are: stamina, efficiency, ability to work with pain, and the weakness and
degenerative changes which naturally result from an injury and from long-suffered pain. See Smoak,
134 S.W.3d at 899.

 Dr. Reed testified that Goss still has pain due to a sciatic nerve injury. Her leg is weak,
atrophied, and painful. If she should attempt to be too active, it would worsen. Reed opined that
Goss would not be able to do any work requiring exertion and could not go back to the type of work
she was doing before the injury. He further stated that she cannot stand for long periods of time and
should only attempt sedentary work in an environment where she would be allowed to get up and
walk around. Goss, age sixty, testified that she has limited mobility and begins to have pain after
activity such as shopping. She still has a lot of pain behind her knee and, after walking, she has to
rest. Goss stated she has been looking for work, but has been unsuccessful in finding a job because
her limitations preclude job opportunities. Reed also testified Goss would continue to improve in
terms of strength and stamina. 

 Dr. Carl Hansen, a vocational specialist, testified he believed that Goss had experienced a
loss of earning capacity as a result of her injury. He explored two different scenarios to arrive at
calculations regarding her loss. First, he operated under a scenario in which Goss could not work
at all, in which case Goss had lost the capacity to earn the approximately $260.00 per week she was
earning at Brookshire. Second, under the scenario in which Goss could work only part-time, she lost
the capacity to earn approximately $100.00 per week. 

 Dr. Dale Funderburk, an economist, relied on Hansen's calculations and data from the Labor
Department to calculate future loss. If Goss were able to work part-time until she was sixty-six years
old, she would have lost $48,250.00 as a result of the injury. If she were unable to work at all, she
would have lost $83,470.00. 

 The evidence verifies that Goss has suffered a permanent loss of earning capacity because
she can no longer do many of the tasks for which she has the training and experience. The evidence
suggests that her continued pain will preclude her from doing jobs requiring any exertion. She can
perform only light or sedentary work, and only if her employer would allow her to move around
periodically. The jury's assessment of damages for loss of future earning capacity is within the range
provided by expert testimony. (6) We conclude there is legally sufficient evidence to support this
element of damages. 

 C. Future Physical Impairment--$43,000.00

 Here, we consider all the evidence that bears on this category of damages even if the evidence
also relates to another category of damages. See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d
757, 773 (Tex. 2003). Physical impairment encompasses the loss of the injured party's former
lifestyle. See Penny, 160 S.W.3d at 253.

 Martie Hartsfield, Goss' (former) mother-in-law, testified that Goss had lost a lot of weight
since the injury. She testified that Goss weighed approximately 130 to 140 pounds at the time of the
accident, even though there is conflicting evidence that Goss weighed only about 100 pounds at the
time. Hartsfield further testified that, before Goss' accident, she was physically active and liked to
hunt and fish. She also would travel in a motorhome and enjoyed participating in sporting activities
with her grandchildren. After the accident, she has not engaged in any of these activities. Goss
testified that her weight had gone down to ninety-two pounds at one point. Dr. Alex Willingham,
a physician, ran a business where life care plans and costs analyses were compiled, and testified to
Goss' future medical needs. In interviewing Goss and reviewing her records, he concluded Goss had
no difficulty with the basic activities of daily living. Goss testified that the constant pain diminished
her appetite, so she did not eat much. She also added she was not able to play with her grandchildren
as much as she once did and just cannot be as active as she once was. 

 Evidence of any weight loss may not be significant for any other reason than it shows Goss'
increasing frailty and weakness and would relate to a decreased ability to participate in activities. 
Considering the testimony regarding Goss' loss of ability to enjoy her own physical activities and
those with her grandchildren, together with the fatigue she experiences limiting those activities, we
conclude the award was within the jury's discretion.

 D. Past and Future Medical Care 

 1. Past Medical Care--$97,000.00

 Goss filed affidavits relating to past medical expenses. Section 18.001 of the Texas Civil
Practice and Remedies Code provides a means by which complying affidavits are considered
sufficient evidence that charges were reasonable and necessary:

 Unless a controverting affidavit is filed as provided by this section, an affidavit that
the amount a person charged for a service was reasonable at the time and place that
the service was provided and that the service was necessary is sufficient evidence to
support a finding of fact by judge or jury that the amount charged was reasonable or
that the service was necessary.

Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (Vernon 1997). The affidavits in the record appear
to comply with Section 18.001's requirements and support a recovery of $96,631.44. The record
does not show that Brookshire filed any controverting affidavit in response. We overrule
Brookshire's contention that there is no evidence to support the jury's finding regarding damages for
past medical care.

 2. Future Medical Care--$400,000.00

 With respect to future medical expenses, Dr. Willingham figured that Goss would need to
visit a pain specialist approximately 3.5 times a year, totaling approximately $10,843.06 over her
lifetime. He added that she would need at least thirty-six visits to a psychologist for the first year
and fewer visits thereafter. She would also require physical therapy and vocational counseling,
occasional pain medication, antianxiety medication, muscle relaxers, periodic diagnostic tests, and
neurostimulator replacement procedures every four years. Willingham concluded Goss would
require a total of $414,311.47 for future medical costs, broken down as follows:

 $ 44,892.50 outpatient services

 $ 76,903.98 allied health services,

 $ 70,644.21 medication,

 $ 23,833.42 diagnostics,

 $131,293.37 costs associated with neurostimulator, and

 $ 66,744.00 equipment and services. (7)


Dr. Weiner, who implanted the neurostimulator, testified Goss will have to undergo an outpatient
procedure to replace the batteries in the neurostimulator every three to five years. He testified that
the initial procedure of implanting the neurostimulator had cost Goss $7,420.00. He testified,
contrary to Willingham, that the neurostimulator's leads would need to be replaced only if they
broke, a rare occurrence. 

 Brookshire argues that Willingham's testimony is contradicted and states there is insufficient 
evidence to support Willingham's conclusions. However, Brookshire did not challenge
Dr. Willingham's competency in presenting medical opinions. Willingham's figures are proper
evidence, and it appears the jury looked to his figures to calculate the damages award. These figures
constitute evidence that supports the jury's verdict. We conclude the evidence is legally sufficient
to support the jury's award.

IX. CONCLUSION

 For the foregoing reasons, we affirm the judgment of the trial court. 



 Jack Carter

 Justice


Date Submitted: June 14, 2006

Date Decided: November 20, 2006

1. At the hearing on Brookshire's first motion for j.n.o.v. or new trial, the trial court stated:


 [W]hen [the judgment is] entered, I will look more carefully at the other points that
you have given me a heads up on at least.


 . . . .


 I will go ahead then and . . . enter the judgment so you can get a copy of that and go
ahead and proceed on then with the, with the motion for new trial.


Goss, 160 S.W.3d at 291.

2. On the breach of duty issue, Williams testified there were no safety guidelines regarding
lowboys. He testified the store employees were free to use and position the lowboys as they saw fit,
except on the sales floor. 
3. Brookshire argues that Reed's testimony is insufficient because it was based on his
misunderstanding that Goss fell when the evidence shows that she caught herself in order to prevent
a fall after bumping into the lowboy. Such a point might be more relevant to a factual sufficiency
argument. As it is, however, we view the evidence in a light most favorable to the verdict, and there
is evidence Reed was familiar with the actual event. Brookshire also presented evidence from an
expert neurosurgeon, radiologist, and biomechanical engineer that would factor significantly into a
factual sufficiency analysis. 
4. The standard of conduct required of a premises owner or occupier toward his or her invitees
is the ordinary care that a reasonably prudent person would exercise under all the pertinent
circumstances. These elements simply tailor the traditional test of the conduct of a reasonably
prudent person to a specific category of defendants, namely, premises occupiers. See Corbin, 648
S.W.2d at 295. "Consequently, an occupier's liability to an invitee depends on whether he acted
reasonably in light of what he knew or should have known about the risks accompanying a premises
condition, not on whether a specific set of facts or a specific breach of duty is established." Id.
5. "Under the second theory [the theory used in Texas] it was recognized that when the
dangerous premises or instrumentalities were furnished, the master had breached his duty to furnish
a reasonably safe place to work or reasonably safe tools, thereby creating a cause of action against
which he could defend by showing that the servant had assumed the risk of the dangers incident
thereto." Robinson, 280 S.W.2d at 239.
6. As a general rule, the jury has the broad discretion to award damages within the range of
evidence presented at trial, so long as a rational basis exists for its calculation. Mayberry v. Tex.
Dep't of Agric., 948 S.W.2d 312, 317 (Tex. App.--Austin 1997, writ denied). The fact that there
is nothing in the record to evidence how the jury arrived at a specific amount is not necessarily fatal
to the verdict. Id. Instead, when the evidence supports a range of award, as opposed to two distinct
options, an award within that range may be an appropriate exercise of the jury's discretion. Id. Here,
the jury could determine that, given her limitations, Goss had lost most of her ability to be gainfully
employed. 
7. Based on Dr. Willingham's testimony, Dr. Funderburk testified he calculated the present
value of Goss' future medical expenses to be $401,465.00.