COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-239-CV

ALBERT KING APPELLANT

V.

DILLON RESOURCES, INC., 

SUNSET TRANSPORTATION, INC., APPELLEES

GLIDEWELL LEASING COMPANY, 

LIMITED PARTNERSHIP, 

SUNSET LOGISTICS, INC., 

CONQUEST MANAGEMENT TRUST 

AND JOHN GLIDEWELL, INDIVIDUALLY

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Albert King appeals from the trial court’s grant of summary judgment in favor of Appellees Sunset Transportation, Inc.; Glidewell Leasing Company, Limited Partnership; Sunset Logistics, Inc.; Dillon Resources, Inc.; Conquest Management Trust; and John Glidewell.  King brings six issues on appeal.  In his first issue, King makes a general assertion that the trial court erred in granting the no-evidence summary judgment motions.  In his second and third issues, King argues that Sunset Logistics did not file a no-evidence motion for summary judgment and, if this court construes the motion as a no-evidence motion for summary judgment, the motion of Sunset Logistics was legally insufficient.  Appellees concede that Sunset Logistics did not move for a no-evidence summary judgment and that the judgment must be reversed and remanded as to Sunset Logistics because the trial court granted more relief for Sunset Logistics than it sought.

In his fourth issue, King argues that whether Sunset Logistics and Dillon Resources owed him a legal duty is a question of law and not an appropriate ground for judgment on a no-evidence motion, and to the extent the trial court granted the motions on this ground, it was error.  In his remaining two issues, King argues that Sunset Logistics and Dillon Resources, as his employers, owed him a legal duty; t
here is evidence of negligent acts of Sunset Logistics and Dillon Resources, and such negligent acts were a proximate cause of the occurrence in question; and
 Appellees Sunset Transportation, Glidewell Leasing, Conquest Management Trust, and John Glidewell have liability under an alter ego theory.  Because we hold that the trial court erroneously granted appellee Sunset Logistics’s summary judgment on grounds not stated in its motion, that King produced more than a scintilla of evidence on the elements of negligence, and that Appellees did not dispute the alter ego theories of recovery in their summary judgment motions, we reverse the judgment of the trial court and remand this case for further proceedings.

I.  Facts

King was injured when the rock hauler he was driving turned over.  At the time of the accident, Sunset Logistics and Dillon Resources were his employers.  Glidewell Leasing and Sunset Logistics owned the truck that King was driving.

King filed suit, claiming that Sunset Logistics and Dillon Resources were negligent by failing to properly repair and maintain equipment, directing that the trailer be overloaded, and generally failing to provide King with safe working conditions on the occasion in question and that their negligence proximately caused his injuries.  King also alleged that appellees Sunset Transportation,  Glidewell Leasing, Conquest Management Trust, and John Glidewell are alter egos of Sunset Logistics and Dillon Resources.

Before the end of the discovery period, appellees Sunset Transportation, Glidewell Leasing, and Sunset Logistics jointly filed a motion alleging both traditional and no-evidence grounds for summary judgment.
(footnote: 2)  Specifically, Sunset Transportation and Glidewell Leasing argued that there was no evidence that they committed any acts of negligence, and no evidence that their negligence, if any, proximately caused the accident in question.  Sunset Transportation also argued that there was no evidence that it owed a legal duty to King.  Sunset Logistics did not argue no-evidence grounds for summary judgment. 

Appellees Dillon Resources, Conquest Management Trust, and John Glidewell also jointly filed a motion alleging both traditional and no-evidence grounds for summary judgment.  They argued that there was no evidence that they committed any acts of negligence, and no evidence that their negligence, if any, proximately caused the accident in question.  Conquest Management Trust and John Glidewell also argued that there was no evidence that they owed a legal duty to King.  No one disputed the alter ego allegations.  The trial court granted a no-evidence summary judgment for Appellees and denied the traditional summary judgment motions.  The order stated that “[t]his judgment is final, and disposes of all claims and all parties.”

II.  Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.
(footnote: 3)  
Such a summary judgment motion “is essentially a motion for a pretrial directed verdict.”
(footnote: 4)  The motion must specifically state the elements for which there is no evidence.
(footnote: 5) 
 
The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.
(footnote: 6)
 When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.
(footnote: 7)  
If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.
(footnote: 8)  Less than a scintilla of evidence exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact.
(footnote: 9) 
 More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions.
(footnote: 10) 
 A genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant’s favor.
(footnote: 11)
III.  Analysis

A. Sunset Logistics, Inc.

We first address King’s argument, which Appellees concede, that the trial court abused its discretion by granting a no-evidence summary judgment for Sunset Logistics.  A trial court errs if it grants summary judgment in favor of a party who has not moved for that relief,
(footnote: 12) and 
we cannot affirm a summary judgment on grounds not expressly set out in the motion or response.
(footnote: 13) 
 
An order or judgment that by its language expressly and unequivocally disposes of all claims and parties is final even though it should have been interlocutory because, for example, it grants summary judgment on only one of a plaintiff’s claims.
(footnote: 14)  Similarly, an otherwise final judgment that grants more relief to a party than that party is entitled to is not interlocutory merely because it grants more relief than requested; rather, it is an erroneous final judgment subject to reversal.
(footnote: 15)  In the interest of judicial economy, we address the merits of other properly presented claims.
(footnote: 16)
 In this case, Sunset Logistics moved for summary judgment only on traditional grounds.  Thus the trial court, in granting a no-evidence summary judgment for Sunset Logistics granted relief not requested.  Because the summary judgment in favor of Sunset Logistics cannot be affirmed on grounds not expressly set out in its motion for summary judgment, we sustain King’s second issue and hold that the trial court’s judgment must be reversed as to Sunset Logistics.
(footnote: 17)  Accordingly, we do not need to address King’s third issue.
(footnote: 18)
B.  King’s Remaining Issues

We next address the merits of King’s remaining issues.  Because the trial court did not specify on which grounds it granted the no-evidence motions, we must affirm the trial court’s decision if any of the grounds raised by the remaining Appellees support it.
(footnote: 19)  We do not, however, consider their grounds for traditional summary judgment, which were expressly denied by the trial court, because Appellees did not preserve those grounds.
(footnote: 20)

1.  Duty

In his fifth issue, King attacks each of the no-evidence grounds raised by Appellees.  In their no-evidence summary judgment motions, all Appellees except Sunset Logistics argued that there was no evidence that they committed any acts of negligence or that their negligence, if any, proximately caused the accident in question.  Sunset Transportation, Conquest Management Trust, and John Glidewell all also argued that there was no evidence that they owed a legal duty to King.  We consider in turn each of King’s arguments as to those grounds.

We first address King’s argument that the trial court erred by granting the no-evidence motion for summary judgment of Dillon Resources on the ground that there was no evidence that it owed a legal duty to King.  King contends that this issue presents a question of law and is not an appropriate ground for judgment on a no-evidence motion.  King further contends that Dillon Resources was his co-employer and that no other fact needs to be established to show duty because employers have a duty to use reasonable care to furnish a reasonably safe work place and reasonably safe instrumentalities.

Generally, “[a]n employer is not an insurer of its employees’ safety at work.”
(footnote: 21)  But “an employer does have a duty to use ordinary care in providing a safe work place”
(footnote: 22) and in furnishing “reasonably safe instrumentalities with which employees are to work.”
(footnote: 23)  These duties are nondelegable and continuous.
(footnote: 24)
 The summary judgment motion of Dillon Resources admitted that King was its employee on the date of the accident and did not dispute that as King’s employer, it owed him a legal duty.  In fact, the motion was silent as to whether Dillon Resources owed any duty to King, arguing only that Conquest Management and John Glidewell did not owe him a legal duty.  The trial court thus could not have granted Dillon Resources summary judgment based on the ground of no evidence of a legal duty to King, and we cannot affirm the judgment for Dillon Resources based on this ground.
(footnote: 25)  Accordingly, to the extent that the trial court’s judgment was based on this ground, we hold that the trial court erred by granting the judgment and sustain King’s fifth issue.  We therefore do not need to address King’s fourth issue.
(footnote: 26)
2.  Breach of Duty

We next consider King’s argument that he presented more than a scintilla of evidence on the issue of whether Dillon Resources negligently breached a duty to King to provide him with a safe place to work and reasonably safe instrumentalities with which to work and to otherwise not negligently injure him.  King’s summary judgment evidence included his deposition in which he stated that he had reported to Dillon approximately ten times, in writing, that the trailer had cracks in the side and that the air bag was leaking on the rear tandem.  He further testified that in his experience with truck driving and in doing structure repair for aircraft, stress cracks will cause the weight to become uneven, making it more likely for the truck to tip over.  He stated that the air bags shift the load and keep the tandem up and that a leak in the air bags can cause the truck to tip over.  King also testified that on the day in question, maintenance brought out the truck for him to drive, that he heard air leaking from the area near the tandems or tailgate, that there was no one for him to report the problem to that day, and that his understanding was that when maintenance pulls a truck out onto the lot, the driver drives it because maintenance is “pretty much saying they’ve got it fixed.”  He stated that he had been told that the cracks were “insignficant,” that they were “no problem,” and that he should continue to drive the truck.  Finally, King testified that he was told “every day” to drive a truck, even if it was illegally overloaded, and that his employers would take care of any tickets that resulted.

Looking at the record in the light most favorable to King, indulging every reasonable inference and resolving any doubts against Dillon Resources, we hold that King produced some evidence that the truck provided to him to drive had maintenance problems that could cause it to turn over and that Dillon Resources was aware of the truck’s problems.  This evidence 
was such that would enable reasonable and fair-minded people to reach different conclusions about whether Dillon Resources committed any negligence on the occasion in question.  We therefore hold that the trial court erred to the extent the summary judgment motion was granted on this ground
(footnote: 27) and sustain King’s fifth issue to that extent.

3.  Proximate Cause

We now consider King’s last argument under his fifth issue, that he presented sufficient summary judgment evidence as to whether negligent acts of Dillon Resources were a proximate cause of the occurrence in question.  King argues that Dillon Resources’ negligence caused the truck he was driving to roll over to the left when it should not have and that it was clearly foreseeable that such a rollover would occur in an overloaded vehicle with a defective air bag system; thus, Dillon Resources’ negligence proximately caused the accident that resulted in his injuries. 

a.  Cause in Fact

Proximate cause consists of both cause in fact and foreseeability.
(footnote: 28)  
Cause in fact is an act or omission that is a substantial factor in bringing about the injury, without which the injury would not have occurred.
(footnote: 29)
 In King’s deposition, he stated that the air bag system is supposed to prevent load shifting; that cracks in the truck cause the load to be unevenly disbursed, making it more likely that the truck might tip over; that he had reported the truck’s air bag system leaking a number of times; that on the day of the accident, he heard air leaking from the rear of the truck; and that the truck still had cracks on the day of the accident.  He further testified that just before the accident, he had been driving at legal speed, he had slowed down to take the turn safely at about twenty miles per hour, no other vehicle cut across or behind him, and he did not strike anything before the accident.  He said that after he made the left turn, he felt the truck jerk to the left, and the truck then turned over on its left.  He also testified that he had driven on this ramp with a load on “a lot” of occasions and had never experienced anything like this before.

From looking at the evidence in the light most favorable to King, there is evidence that the truck air bag system must be maintained for its stability and to avoid a safety hazard and that stress fractures must be repaired and trucks not overloaded for the same reason.
(footnote: 30)  
King’s evidence constitutes some evidence that the truck turned over because of a lack of stability resulting from the failure to properly maintain the truck.
(footnote: 31)  There is no evidence that anything else but this failure caused the truck to tip over. 
 Thus, King produced evidence that the failure to maintain the truck properly and negligence in providing the truck to King were substantial factors in causing the accident and King’s injuries, which would not have otherwise occurred.  We therefore hold that there was at least some evidence, sufficient to raise a fact issue, that negligence by Dillon Resources was a cause in fact of King’s injuries.

b.  Foreseeability

King also argues that he produced sufficient summary judgment evidence of foreseeability.  The element of foreseeability is met if a person of average intelligence should have anticipated that the act or omission would create a danger to others.
(footnote: 32)
 King’s deposition stated that he had reported the stress cracks and an air bag leak, in writing, multiple times, which shows that the company was aware that the air bag system, designed to keep loads from shifting, was not working properly and that the truck had cracks.  He further testified that on the day in question, maintenance brought the truck out for him to drive; that when maintenance puts a truck on the lot, the driver drives it because maintenance is basically saying that the problem has been fixed; and that he had previously been told to continue driving the truck because the cracks were “insignificant” and not a problem.  King therefore produced some evidence, sufficient to raise a fact issue, that Dillon Resources was aware that he would be driving a truck with maintenance issues that could cause a truck to turn over.  King therefore produced some evidence as to foreseeability, such that would enable reasonable and fair-minded people to reach different conclusions about whether the turnover was foreseeable.
(footnote: 33)  We therefore hold that King produced evidence of proximate cause sufficient to prevent a no-evidence summary judgment motion on this ground and that the trial court erred to the extent that it granted the motion on this ground.  Accordingly, we sustain King’s fifth issue.

4.  Alter Ego

Finally, we address King’s sixth issue, which argues that the trial court erred by granting the no-evidence motions for Sunset Transportation; Glidewell Leasing Company; Conquest Management Trust; and John Glidewell because they did not file a no-evidence motion on any or all of the elements of King’s alter ego theory of recovery against them.
(footnote: 34)  King only argues that these Appellees are liable based on the alter ego theory, and thus if there is no evidence of negligence as to Sunset Logistics and Dillon Resources, then there is no evidence of negligence as to the remaining Appellees.  The trial court therefore could have granted summary judgment for these Appellees without determining the merits of King’s alter ego theory.  Because these Appellees did not allege that there was no evidence on King’s alter ego theory, the trial court could not have granted the motion in their favor on the ground.
(footnote: 35)  Accordingly, because we have already held that King produced sufficient summary judgment evidence to defeat the no-evidence summary judgment motion of Dillon Resources and that the trial court erred by granting the no-evidence summary judgment motion of Sunset Logistics, we hold that the trial court erred by granting the no-evidence summary judgment motions of Sunset Transportation; Glidewell Leasing; Conquest Management Trust; and John Glidewell.  We sustain King’s sixth issue.

Because we have held that the trial court erred by granting the no-evidence motions on all of the grounds raised in the motions, we also sustain King’s first issue.

Conclusion

Having held that the trial court erred by granting Appellees’ no-evidence summary judgment motions, we reverse the trial court’s judgment and remand this case for further proceedings.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: 
CAYCE, LIVINGSTON, and DAUPHINOT, JJ.

CAYCE, C.J. concurs without opinion.

LIVINGSTON, J. concurs without opinion.  

DELIVERED:  
April 5, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. R. Civ. P.
 166a(i) & cmt (stating that ordinarily a no-evidence motion would be permitted after the discovery period but not before); 
see also Specialty Retailers, Inc. v. Fuqua
, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that the rule “does not require that discovery must have been completed, only that there was ‘adequate time’”).

3:
Tex. R. Civ. P.
 166a(i).

4:
Mack Trucks
,
 Inc. v. Tamez
, 206 S.W.3d 572, 581-82 (Tex. 2006).

5:
Tex. R. Civ. P.
 166a(i);
 Johnson v. Brewer & Pritchard
,
 P.C., 
73 S.W.3d 193, 207 (Tex. 2002).

6:
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002).

7:
Sudan v. Sudan
, 199 S.W.3d 291, 292 (Tex. 2006).

8:
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

9:
Kindred v. Con/Chem
,
 Inc.
, 650 S.W.2d 61, 63 (Tex. 1983).

10:
Ford Motor Co. v. Ridgway
, 135 S.W.3d 598, 601 (Tex. 2004); 
Merrell Dow Pharm.
,
 Inc. v. Havner
, 953 S.W.2d 706, 711 (Tex. 1997).

11:
Moore
, 981 S.W.2d at 266; 
see also
 
Anderson v. Liberty Lobby
,
 Inc.
, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 2513-14 (1986) (interpreting 
Fed. R. Civ. P.
 56).

12:
Young v. Hodde
, 682 S.W.2d 236, 237 (Tex. 1984).

13:
Stiles v. Resolution Trust Corp.
, 867 S.W.2d 24, 26 (Tex. 1993).

14:
Lehmann v. Har-Con Corp.
, 39 S.W.3d 191, 200 (Tex. 2001).

15:
Id
.

16:
Bandera Elec. Coop. v. Gilchrist
, 946 S.W.2d 336, 337 (Tex. 1997) (stating that “[b]y not reversing the entire judgment, we avoid the needless relitigation of decided issues and thus promote judicial economy”); 
Positive Feed
,
 Inc. v. Guthmann
, 4 S.W.3d 879, 881 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

17:
See Lehmann
, 39 S.W.3d at 205; 
see also Stiles
, 867 S.W.2d at 26.

18:
See
 
Tex. R. App. P.
 47.1.

19:
See Carr v. Brasher
, 776 S.W.2d 567, 559 (Tex. 1989); 
see also Bell v. VPSI
,
 Inc.
, 205 S.W.3d 706, 712 (Tex. App.—Fort Worth 2006, no pet.).

20:
See Carrico v. Kondos
, 111 S.W.3d 582, 585 (Tex. App.—Fort Worth 2003, pet. denied) (holding that to preserve summary judgment grounds for appeal, “the party must raise them in the summary judgment proceeding and present them in an issue or cross-point on appeal”); 
see also Sefzik v. City of McKinney
, 198 S.W.3d 884, 890 (Tex. App.—Dallas 2006, no pet.)
.

21:
Leitch v. Hornsby
, 935 S.W.2d 114, 117 (Tex. 1996).

22:
Id.

23:
Farley v. M M Cattle Co.
, 529 S.W.2d 751, 754 (Tex. 1975), 
overruled on other grounds by
 
Parker v. Highland Park
,
 Inc.
, 565 S.W.2d 512 (Tex. 1978); 
see also Brookshire Grocery Co. v. Goss
, 208 S.W.3d 706, 712 (Tex. App.—Texarkana 2006, no pet. h.).

24:
Brookshire Grocery Co.
, 208 S.W.3d at 712.

25:
See Stiles
, 867 S.W.2d at 26.

26:
Tex. R. App. P.
 47.1.

27:
See Ford Motor Co.
, 135 S.W.3d at 601 (stating that “[w]e have repeatedly held that more than a scintilla of evidence exists if the evidence ‘rises to a level that would enable reasonable and fair-minded people to differ in their conclusions’”); 
see also Merrell Dow Pharm.
,
 Inc.
, 953 S.W.2d at 711. 

28:
Clark v. Waggoner
, 452 S.W.2d 437, 439-40 (Tex. 1970); 
Lawrence v. City of Wichita Falls
, 122 S.W.3d 322, 329 (Tex. App.—Fort Worth 2003, pet. denied).

29:
Morris v. JTM Materials
,
 Inc.
, 78 S.W.3d 28, 50 (Tex. App.—Fort Worth 2002, no pet.)
.

30:
See
 
Wal-Mart Stores
,
 Inc. v. Berry
, 833 S.W.2d 587, 591 (Tex. App.—Texarkana 1992, writ denied) (holding that evidence “that shrink-wrapping the pallets is necessary for their stability and to avoid a safety hazard,” that “[l]ack of stability can cause the stacks to lean and, possibly, fall,” and that “[t]he pallets were leaning just before the accident occurred . . . constitutes circumstantial evidence that the pallets leaned and fell because of a lack of stability brought about by the failure to shrink-wrap them”).

31:
See id.
; 
see also Ford Motor Co.
, 135 S.W.3d at 601 (stating that “[b]oth direct and circumstantial evidence may be used to establish any material fact”).

32:
Waggoner
, 452 S.W.2d at 439
; Lawrence
, 122 S.W.3d at 329.

33:
See Berry
, 833 S.W.2d at 591 (holding that evidence that store required pallets to be shrink-wrapped to give them stability and considered unwrapped pallets dangerous and that the pallets were stacked “constitutes some evidence from which the jury could infer that [the store] could reasonably foresee that the displays could fall if not properly wrapped and stacked”).

34:
See 
Tex. R. Civ. P.
 166a(i);
 Johnson
,
 
73 S.W.3d at 207.

35:
See Johnson
,
 
73 S.W.3d at 207.