Opinion filed February 22, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed February 22,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00149-CV 

                                                    __________

 

                             CAMIL IBRAHIM A/K/A CAMIL KREIT 

                       AND
DR. CAMIL KREIT, M.D., P.A., Appellants

                                                             V.

                                          LINDA
YOUNG, Appellee

 



 

                                         On
Appeal from the 411th District Court

                                                            Polk
County, Texas

                                                Trial
Court Cause No. CIV21,156

 



 

                                                                   O
P I N I O N

 

This
is a personal injury suit.  Linda Young sued her employer and a furniture
manufacturer for injuries she sustained when her office chair broke and she
fell.  She later filed an amended pleading naming Dr. Camil Kreit, M.D., P.A.
a/k/a Camil Ibrahim as a defendant.  When this defendant did not respond to
requests for admission, Young filed a motion for partial summary judgment.  The
trial court granted the motion and, after an evidentiary hearing, rendered
final judgment in favor of Young and against Dr. Camil Kreit, M.D., P.A. a/k/a
Camil Ibrahim.  Camil Ibrahim a/k/a Camil Kreit and Dr. Camil Kreit, M.D., P.A.
have separately appealed from this judgment.








                                                              I.
Background Facts

Unless
clarity requires that we identify the names utilized by the parties in a
specific document, we will refer to the individual as Dr. Kreit and the
professional association as Kreit PA. Young initially filed suit against Pierre
Semrani, M.D., P.A. d/b/a Family Health Clinic; Dr. Elias Kanaan, Individually;
and FDL, Inc.  Young alleged that Dr. Kanaan was her employer and that she was
injured when an office chair manufactured by FDL broke causing her to fall. 
One week later, Young filed an amended petition and added Dr. Camil Kreit,
M.D., P.A. as a defendant.  Young alleged in this petition that Kreit PA was
her employer, and she requested service on ADr.
Camil Kreit, M.D., P.A.@
at a post office box.  Citation was issued and sent by certified mail to AKREIT, CAMIL, DR. M.D.@[1] 
Approximately five weeks later, a second citation was issued for service on AKREIT, CAMIL, DR., M.D.@  The officer=s return reflects that this
was personally delivered to AKreit,
Camil Dr.@ on March 1,
2004.

On
March 3, the district clerk received a letter dated March 2, 2004, and signed
by Camil Ibrahim over a fingerprint or thumbprint.  The letter stated: APlease file copy of
citation cause #CI21156[2] refused for
cause and counterclaims of United States District court for the southern
district of Texas #H 04-439[.]  In addition to copy of the 13th
amendment[3] in jacket
file CI21156.  Further affiant saith naught Camil Ibrahim.@  Attached to the letter
was a copy of the second citation and Young=s
amended petition.  The notation Arefused
for cause@ was written
on every page.  The letter also included a copy of a federal pleading styled a
counterclaim in admiralty filed by Camil Ibrahim against Young=s trial counsel.








On
March 15, Camil Ibrahim mailed a second letter to the district clerk.  This
letter stated: APlease
find a copy of Default Judgment and [an] affidavit Dated 3/12/2004, to be filed
in under NO. CIV21156.@ 
The affidavit authenticates a default judgment he alleged was taken against
Young=s trial counsel.[4] 
The default judgment has a federal style and cause number but was signed by
Camil Ibrahim.  On March 30, Camil Ibrahim sent a copy to the district clerk of
a letter he sent to the federal district clerk.  This letter stated:  APlease find an original of
Default Judgment received from the County record office, affidavit Dated
3/12/2004, and Certified copy of thirteen amendment to the Constitutions, to be
filed in the civil action file #HO4-439.@

Young
filed a second amended petition on April 7.  This petition named ADr. Camil Kreit, MD, PA
a/k/a Camil Ibrahim@
as a defendant and added a fraud allegation, contending that the defendant
withheld money from her paycheck for health insurance premiums but did not
maintain any health insurance for her.  On May 7, Young mailed a request for
production of documents and a request for admissions to ADr. Camil Kreit, M.D. a/k/a Camil Ibrahim.@  The requests were not
answered, and on September 24, Young filed a motion for partial summary
judgment.  That same day, Camil Ibrahim sent a copy to the district clerk of
his letter to the federal district clerk.[5] 
Attached to this letter was a copy of Young=s
motion for partial summary judgment.  The notation Arefused for cause@ had been written on each page. 








On
October 1, Camil Ibrahim filed a ANOTICE
OF FACTS AND LAW, AND DEMAND.@ 
In this document, he indicated that his pleading was a special appearance under
Rule 8 of the supplemental admiralty rules and that he was from the Akreits Family.@  He included an affidavit
that stated:

We, Men called Camil
Ibrahim D\B\A Camil kreit MD, Affiants herein, state under penalties of perjury
under the Laws of the United States of America and of Texas that we are
competent to be witnesses and that the facts contained herein are true,
correct, complete, and not misleading to the best of our personal knowledge and
belief so help us God

 

                                                               Statement
of Facts

 

There is no
documentation to evidence that we, Camil Ibrahim are not living souls and
demand strict proof thereof

 

There is no
documentation to evidence that we, Camil Ibrahim are the defendants CAMIL KREIT
or any derivative name forms thereof listed above and demand strict proof
thereof

 

I, Camil Ibrahim
deny being the fictitious entities CAMIL KREIT or any derivative name forms
thereof listed as defendants above and demand strict proof thereof

 

There is no
documentation to evidence that I, Camil Ibrahim voluntarily use Federal Reserve
Notes to discharge debts in equity with limited liability, nor that such use is
not compelled by necessity as a matter of survival only and demand strict proof
thereof

 

There is no
documentation to evidence that we, Camil Ibrahim are persons, residents,
individuals, or citizens of the United States/District of Columbia and its
instrumentalities under the purview of the 14th Amendment to the constitution
of the United States and demand strict proof thereof

 

There is no
documentation to evidence that Camil Ibrahim have not reserved their Right
under the Uniform commercial Code at Article I, '
207, whereby Camil Ibrahim may reserve their common law Right not to be
compelled to perform under any contract, commercial agreement, or bankruptcy
and by such reservation of Right, Camil Ibrahim have not informed all
administrative agencies of federal, state, and local government that Camil
Ibrahim do not and will not accept the liability associated with the compelled
benefit of any such unrevealed contract, commercial agreement, or bankruptcy
and demand strict proof thereof








There is no evidence
or documentation to show that Camil Ibrahim have been incorporated or that
CAMIL KREIT are corporations and demand strict proof thereof

 

There is no evidence
or documentation to show that CAMIL KREIT have been incorporated or that Camil
Kreit are corporations

 

There is no evidence
or documentation to show that we have been incorporated or that we are
corporations

 

There is no evidence
or documentation to show that an unincorporated living man or woman has
standing to sue or be sued in a statutory Court

 

There is no evidence
or documentation to show that an unincorporated artificial entity, living man
or woman, Camil Ibrahim, or CAMIL KREIT have standing to sue or be sued in a
statutory Court pursuant to Black=s
Law Dictionary - Sixth Edition Definition - Legal Entity, 59 Am Jur 2d ' 20, 1 TAC SUBCHAPTER C
ENTITY NAMES ' 79 31,
TRCP Rule 52, and FRCP 9 (a)

 

We deny the
existence of corporations

 

Further Affiant
saith naught

 

/s/

Camil Ibrahim

D\b\a Camil Kreit MD

 

On October 4,
Camil Ibrahim d/b/a Camil Kreit, M.D. filed a ARESPONSE
to case No CIV 21156.@
In this pleading, he denied all allegations against him and asked the trial
court to dismiss them.  On October 12, ACamil
Ibrahim d/b/a Camil Kreit MD@
filed a motion to dismiss for failure to state a claim upon which relief can be
granted.

The
trial court conducted a hearing on October 27.  No one appeared on behalf of
Dr. Kreit or Kreit PA.  The trial court entered a partial summary judgment
against ADr. Camil
Kreit, M.D., P.A. a/k/a Camil Kreit.@ 
Dr. Kreit subsequently filed an objection to the summary judgment order. In
this objection, he contended that insufficient facts had been shown to support
a partial summary judgment and that Young=s
counsel had falsely represented to the trial court that Dr. Camil Kreit was a
party to the lawsuit.  He asked the court to dismiss all claims against Dr.
Camil Kreit/Camil Kreit M.D. and to sanction Young=s counsel.








The
trial court set a final hearing for February 3, 2006.  Dr. Kreit appeared at
the hearing and advised the court that he was there by special appearance.  He
objected to the court=s
jurisdiction and indicated that federal courts had jurisdiction of the dispute
and that venue had been changed to the Department of Health Service.  The trial
court overruled his objection.  Young testified and was cross-examined by Dr.
Kreit.  Young then called her treating physician by deposition.  After Young
read that portion of the deposition establishing the physician=s qualifications and
personal knowledge, Dr. Kreit objected, contending that this testimony was
irrelevant because Young=s
symptoms were cardiac and the physician=s
testimony had nothing to do with them.  Dr. Kreit=s
objection was overruled.  After Young read additional testimony, Dr. Kreit
objected to the lack of a jury.  The trial court verified that Dr. Kreit had
not paid a jury fee and overruled his objection. Young read the remainder of
the deposition and rested.  Dr. Kreit then testified.  He reiterated his
objections to the trial court=s
assumption of jurisdiction, and he testified that Young=s health problems were due to other
preexisting conditions.  On cross-examination, he testified that his name is
Camil Ibrahim and that he is doing business as Camil Kreit, M.D.

The
trial court rendered judgment for Young against ADr.
Camil Kreit, M.D., P.A. a/k/a Camil Ibrahim.@ 
The trial court awarded Young past and future medical expenses of $104,527.80,
past and future lost wages of $138,112, fraud damages of $1,600, and past and
future mental anguish and pain and suffering damages of $150,000.  Kreit PA
filed a motion to quash, to withdraw void admissions, and for new trial.  Dr.
Kreit filed a similar motion.  The trial court overruled both motions.

                                               II. Issues[6]

Kreit
PA and Dr. Kreit attack the partial summary judgment and final judgment with
several issues.  Collectively, they argue that:

1.  the trial court did not have jurisdiction over either of them;

 

2.  the trial court
did not give sufficient notice of the trial setting;

 








3.  the trial
court improperly denied them a jury;

 

4.  the evidence
was legally or factually insufficient to support the trial court=s damage awards; and

 

5.  the trial
court erred by denying their postjudgment motions.

 

                                                       III. Discussion

A.  Did the Trial Court Acquire Jurisdiction over Dr.
Kreit or Kreit PA?

Young
argues that she sued Dr. Kreit not Kreit PA and that the references to Kreit PA
in her pleadings and in the trial court=s
orders and judgment simply refer to a Ad/b/a@ rather than a separate
entity.  Dr. Kreit and Kreit PA both argue that the trial court did not acquire
jurisdiction over them and, therefore, that the judgment is void as to them. 
In an effort to resolve this threshold question, we will first determine who
Young sued and then who appeared.

1.  Young=s
Pleadings.

Young=s amended petition added ADr. Camil Kreit, MD, PA@ as a defendant.  Subsequent
pleadings referred to this defendant as ADr.
Camil Kreit, M.D., P.A. a/k/a Camil Ibrahim.@ 
Dr. Kreit and Kreit PA both contend that Kreit PA is a duly formed Texas
professional association.  Young=s
amended petition appears to assert a claim against that professional
association.  However, she contends that the references to the professional
association were merely included to assert a claim against Dr Kreit=s assumed name pursuant to Tex. R. Civ. P. 28.[7]








In
Chilkewitz v. Hyson, 22 S.W.3d 825 (Tex. 1999), the court held that a
petition naming a doctor as a defendant in a malpractice action was sufficient
to toll limitations against a professional association with the same name.  
The plaintiff sued AMorton
Hyson, M.D.@ and
identified him as an individual who practiced medicine.  22 S.W.3d at 827.  Dr.
Hyson filed an answer.  After limitations had run, Dr. Hyson filed a motion for
summary judgment contending that he, individually, did not perform or attend
the plaintiff=s
surgery; that none of his employees did so either; and that he did not own any
of the equipment used during the surgery.  The plaintiff filed an amended
petition and changed the defendant=s
name from AMorton
Hyson, M.D.@ to AMorton Hyson, M.D., P.A.@  Id.  The
professional association appeared and argued that any claim against it was
barred by limitations.  The trial court overruled the professional association=s limitations argument and
entered judgment for the plaintiff.  Id.  

The
supreme court applied Rule 28 and agreed with the trial court because there was
some evidence that the professional association conducted business as Morton
Hyson, M.D.  Id. at 828.  The court noted that Rule 28 allows a
plaintiff to file suit against an individual doing business under the name of
an association, partnership, or corporation even if the association,
partnership, or corporation does not exist.  For example, if an individual was
doing business under the name Widgets International, Inc. but the plaintiff
thought that this was an actual entity, a suit against Widgets International,
Inc. would be considered a suit against the individual.  Id. at 829.  
The court further noted that if an association, partnership, or corporation
does business in the name of an individual, a suit may be filed against the
entity by using the individual=s
name, so long as the plaintiff amends his petition to add the defendant=s correct legal name.[8] 
Id.

Dr.
Kreit and Kreit PA argue that Chilkewitz is not controlling because in
that case the original defendant was properly served, the pleadings were
eventually amended to correctly name the professional association as a party,
and the case involved the application of a limitations defense.  They contend
that in this case Kreit PA was never served and that Young=s pleadings were never
corrected to name the proper party and note that they are not asserting
limitations.  We agree that Young=s
citations were defective, but because this is not an appeal of a default
judgment and because a defective citation can be waived with an appearance,[9]
this fact does not end our analysis. 








The
question is, who did Young sue?  Even though her amended petition appears to
refer to a professional association, Young did not request service on a
registered agent.[10]  Conversely,
when she sued Pierre Semrani, M.D., P.A. d/b/a Family Health Clinic and FDL,
Young requested service on their registered agents.  Furthermore, beginning
with the second amended petition, Young=s
pleadings referred to the defendant as ADr.
Camil Kreit, MD, PA a/k/a Camil Ibrahim.@ 
The significance of this is that it followed and responded to a series of
letters from Dr. Kreit to the district clerk.

This
correspondence establishes at least some of the reason for the confusion.  The
letters were always signed by Camil Ibrahim but at times referred to the name
Kreit[11] and in one
shows that he did business as Camil Kreit M.D., P.A.[12]  
We agree with Young that Rule 28 applies.  Because Dr. Kreit does business as
Camil Kreit M.D., P.A. and because Young amended her petition in response to
Dr. Kreit=s
correspondence, Young=s
amended petition added Dr. Kreit as a defendant.  Young did not sue Kreit PA. 
Therefore, it was not a party before the trial court, and we have no
jurisdiction over it now.  Kreit PA is dismissed from this appeal.    

2.  Dr. Kreit=s
Pleadings.








Dr.
Kreit complains that Young=s
citations and the officer=s
returns were defective for several reasons.  We agree.  The question becomes
did Dr. Kreit waive this by filing an answer?  And if so, when?  The supreme
court has eschewed a technical definition or test for what constitutes an
answer.  In Smith v. Lippmann, 826 S.W.2d 137, 138 (Tex. 1992), the
court held that a letter filed by the defendant was an answer B even though it was not in
the standard form of an answer B
because it identified the parties, the case, and the defendant=s current address.[13]

Dr.
Kreit argues that an answer must also contain some response to the plaintiff=s petition, citing Narvaez
v. Maldonado, 127 S.W.3d 313, 318 (Tex. App.CAustin
2004, no pet.).  This was a divorce case.  Maldonado alleged that she and the
respondent were common-law married.  He signed the citation, had his signature
notarized, and returned it to the district clerk=s
office.  The Austin court held that this was not an answer because Ait included no statement
that could be construed as any type of response to the pleadings.@  127 S.W.3d at 318.  We
agree with the Austin court that Narvaez did not enter a general appearance but
respectfully disagree that an answer must necessarily be responsive to the
plaintiff=s petition. 
The letter that the supreme court considered an answer in Lippmann
acknowledged receipt of the plaintiff=s
petition, but it did not respond to any of the plaintiff=s allegations.  See Lippmann, 826
S.W.2d at 137.  








Dr.
Kreit also argues that the Lippmann test only applies to default
judgments and that a document must meet a higher standard before it can be
considered an answer in a summary judgment case, citing Hock v. Salaices,
982 S.W.2d 591 (Tex. App.CSan
Antonio 1998, no pet.).  We agree with the San Antonio court=s holding that the trial
court improperly granted a summary judgment after first finding that the
defendant had not filed an answer, but we respectfully disagree with part of
its analysis and, instead, agree with the concurring opinion in that case.  982
S.W.3d at 595.  The court relied upon the procedural requirements for obtaining
a summary judgment and a public policy that abhors defaults to conclude that a
document could be considered an answer if the plaintiff were attempting to
obtain a default judgment but not an answer if the plaintiff filed a motion for
summary judgment.  We note that the court provided no definition for what
constitutes an answer sufficient to allow a plaintiff to move for summary
judgment but, instead, concluded that it was a factually specific determination
subject to an abuse of discretion review.  Id. at 594.  The court cited
no provision of the Rules of Civil Procedure supporting a conclusion that a
document is or is not an answer depending upon the plaintiff=s subsequent actions and
cited no supreme court case applying different tests for determining what
constitutes an answer in different situations.[14] 
Id.

The
San Antonio court=s
analysis either leads to a Acatch
twenty-two@ or
discourages plaintiffs from providing further notice before moving for
judgment.  If the court is correct and a defendant files something that is an
answer for default purposes but not for summary judgment purposes, the
plaintiff=s ability to
proceed would be frustrated through no fault of its own.  In that instance, the
defendant is actually rewarded for filing a deficient document; when there is
any question about the effect of a defendant=s
filing, the plaintiff is encouraged to treat it as no answer for any purpose
and move for default judgment B
or otherwise spend additional time and money attempting to force the defendant
to file a more sufficient pleading.[15]  If,
however, the document is treated as an answer for all purposes, the defendant
is protected from having a default judgment entered, and it would receive at
least twenty-one days notice that the plaintiff was moving for summary
judgment.  Consequently, we agree with Justice Angelini=s concurrence that, Aif a document constitutes an answer for any
purpose, it should constitute an answer for all purposes.@  Id. at 596.








Dr.
Kreit mailed three transmittal letters to the clerk=s office in March.  The first letter, dated
March 2, 2004, referenced the cause number, confirmed his receipt of Young=s amended petition because
it transmitted a copy of that petition with the notation Arefused for cause@ on the citation and on
each page of the petition, and identified the parties because the letter
included a copy of the amended petition.  Dr. Kreit=s letter also included a copy of his federal
pleading against Young=s
trial counsel.  Dr. Kreit=s
address is shown in three places in that pleading.  Consequently, the March 2
letter identified the parties, the case, and Dr. Kreit=s current address and was, therefore, a
general appearance.  Dr. Kreit=s
general appearance waived any deficiencies in Young=s citations and the  return, and his eighth
issue is overruled.

B. 
Did the Trial Court Properly Grant Young=s
Motion for Partial Summary Judgment?

Dr.
Kreit argues that the trial court erred by granting Young=s motion for partial
summary judgment because the evidence was legally insufficient.  We will apply
the well‑recognized standard of review for traditional summary judgments.
Questions of law are reviewed de novo.  St. Paul Ins. Co. v. Tex. Dep=t of Transp., 999
S.W.2d 881 (Tex. App.CAustin
1999, pet. denied). To determine if a fact question exists, we must consider
whether reasonable and fair‑minded jurors could differ in their
conclusions in light of all the evidence presented. Goodyear Tire &
Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all
the evidence in the light most favorable to the nonmovant, indulging all
reasonable inferences in favor of the nonmovant, and determine whether the
movant proved that there were no genuine issues of material fact and that it was
entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546 (Tex. 1985); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671 (Tex. 1979).








Young=s summary judgment evidence
was Dr. Kreit=s deemed
admissions.  Dr. Kreit argues that the request for admissions is void because
it was mailed to him before he made a general appearance.  We have previously
held that Dr. Kreit=s
March 2 correspondence constituted a general appearance.   The request for
admissions was mailed to him on May 7.  He was, therefore, required to respond
to Young=s discovery
requests, and his failure to do so resulted in deemed admissions.     Dr. Kreit
argues that we should look beyond the deemed admissions, contending that his
motion to dismiss for failure to state a claim upon which relief can be granted
should be treated as a summary judgment response.  The supreme court has held
that issues not expressly presented to the trial court by written motion,
answer, or other response shall not be considered on appeal when reviewing a
summary judgment.  Clear Creek Basin, 589 S.W.2d at 677.  We realize
that Dr. Kreit proceeded pro se before the trial court.  He is, however, still
subject to the same rules of procedure as litigants who retain counsel.  Mansfield
State Bank v. Cohn, 573 S.W.2d 181, 184-85 (Tex. 1978);  Holt v. F.F.
Enters., 990 S.W.2d 756, 759 (Tex. App.CAmarillo
1998, pet. denied).  Furthermore, even if Dr. Kreit had tendered his
documentation as a summary judgment response, because Young was proceeding on
deemed admissions, consideration of evidence refuting any of the admitted facts
would have been inappropriate.  Reyes v. Int=l Metals Supply Co., 666 S.W.2d 622, 624
(Tex. App.CHouston
[1st Dist.] 1984, no writ).   Accordingly, we cannot say that the court was
required to consider any pleading not expressly presented to it as a summary
judgment response, and we may not do so now ourselves.  

Dr.
Kreit next argues that, even if we consider the deemed admissions, the evidence
was legally insufficient.  Dr. Kreit admitted that:

$          he
was Dr. Camil Kreit, MD, PA a/k/a Camil Ibrahim;

$          he
was Young=s employer
on January 27, 2002;

$          Young was acting
in the course and scope of her employment when the chair broke causing her to
fall and to suffer injuries to her neck and back;

 

$          he did not have
workers= compensation
insurance when Young was injured;

 

$          he did not
adequately train Young;

 

$          he did not
provide her with a safe workplace;

 

$          he provided her
with an unsafe chair in which to sit and perform her work duties;

 

$          he withheld
insurance premiums from her payroll check without providing insurance; and

 

$          he failed to
compensate her for working overtime hours.








Dr. Kreit argues
that these admissions did not prove when Young=s
accident occurred or if she was working for him when the accident occurred.  He
also argues that the admissions failed to establish that he owed Young a duty
or that he had a duty to train her concerning the safe use of an office chair. 
Finally, he contends that Young did not prove that any breach of duty
proximately caused her injuries.

Young
responds by directing us to Morgan v. Compugraphic Corp., 675 S.W.2d
729, 732 (Tex. 1984), where the supreme court held that a default judgment
establishes that the defendant=s
conduct caused the event upon which the claimant=s
suit is based.  That decision, however, is inapplicable because Young=s judgment was a summary
judgment not a default judgment.  It was her obligation to prove Dr. Kreit=s liability as a matter of
law.  As a general rule, allegations in pleadings do not constitute competent
summary judgment proof.  See Laidlaw Waste Sys. (Dallas), Inc. v. City of
Wilmer, 904 S.W.2d 656, 660 (Tex. 1995).  Consequently, the allegations in
her pleadings cannot supply any missing evidentiary points.  If Dr. Kreit=s liability was
established, it was by the deemed admissions.

Dr.
Kreit admitted that he was Young=s
employer.  As an employer, Dr. Kreit had a continuous, nondelegable duty to
provide her with a safe workplace and with reasonably safe instrumentalities
with which to work.  Leitch v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996)
(safe workplace); Brookshire Grocery Co. v. Goss, 208 S.W.3d 706, 712
(Tex. App.CTexarkana
2006, no pet.) (safe instrumentalities).  Dr. Kreit admitted that he breached
his duty as an employer by not adequately training Young, by not providing her
with a safe workplace, and by giving her an unsafe work chair.  Dr. Kreit also
admitted that Young was injured while in the course and scope of her employment
when her chair broke and she fell.  Dr. Kreit=s
admissions establish a duty, a breach of that duty, and damages.  They are,
therefore, sufficient to prove that Dr. Kreit was liable as a matter of law for
a negligence cause of action.








We
agree, however, with Dr. Kreit that the admission that he withheld money for
insurance premiums without providing insurance is insufficient to establish his
liability for fraud.  To recover for fraud, Young was required to prove (1)
that a material representation (2) was false, (3) was either known to be false
when made or was made recklessly without knowledge of its truth, (4) and was
made with the intent that the representation be relied upon; (5) that it was
relied upon; and (6) that it caused injury.  See Johnson & Johnson Med.,
Inc. v. Sanchez, 924 S.W.2d 925, 929‑30 (Tex. 1996).  The deemed
admission is insufficient to establish each of these elements.

Dr.
Kreit=s first issue is
granted in part.  The trial court erred by entering summary judgment against
him for fraud.  The remainder of his first issue is overruled.  This holding
moots consideration of Dr. Kreit=s
seventh issue. 

C. 
Did Dr. Kreit Receive Sufficient Notice of the Trial Setting?

The
trial court sent a letter addressed to ADr.
Camil Kreit a/k/a Dr. Camil Ibrahim@
on December 7, 2005.  The letter stated:

The
above entitled and numbered cause is set for final hearing on
February 3rd, 2006 at 9:30 A.M. in the District Court of Polk
County in Livingston, Texas.  Please be advised that pursuant to
rule 165a(1) of the Texas Rules of Civil Procedure, there is a possibility the
case will be dismissed for want of prosecution if you fail to appear at this
hearing.

 

Dr. Kreit argues
that this was insufficient notice that a trial would occur.  We disagree.  Due
process requires Anotice
reasonably calculated, under the circumstances, to apprise interested parties
of the pendency of the action and afford them the opportunity to present their
objections.@  Peralta
v. Heights Med. Ctr., Inc., 485 U.S. 80, 84 (1988). Due process also
requires that trial courts give prior notice of some potential actions, such as
dismissal for want of prosecution.  See Villarreal v. San Antonio Truck
& Equip., 994 S.W.2d 628 (Tex. 1999) (notice of potential dismissal for
want of prosecution under Tex. R. Civ.
P. 165a is insufficient to provide notice of potential dismissal for
want of prosecution under the court=s
inherent authority).

The
notice that a Afinal
hearing@ would occur
on February 3 was sufficient to advise the parties that all remaining issues
would be resolved on February 3.  The actions that occurred on February 3 are
not inconsistent with this notice.  We perceive no appreciable difference
between advising Dr. Kreit that a trial would occur versus advising him that
the final hearing would occur.  Dr. Kreit was properly alerted to the pendency
of the action and was given the opportunity to participate.  The fact that he
may not have fully appreciated this because he was proceeding pro se does not
give rise to a constitutional violation.  Dr. Kreit=s second issue is overruled.








D. 
Did the Trial Court Err by Denying Dr. Kreit a Jury Trial?

Dr.
Kreit next argues that he was improperly denied a jury trial.  Dr. Kreit has
waived this issue.  He did not object to the lack of a jury until well into the
second witness=s
testimony.  This was untimely.  See Rodriguez v. Tex. Dep=t of Mental Health &
Mental Retardation, 942 S.W.2d 53, 56 (Tex. App.CCorpus Christi 1997, no pet.) (a party waives
its right to a jury trial by failing to object when the trial court undertakes
to try the cause before the bench).  Dr. Kreit=s
third issue is overruled.

E.
 Are the Trial Court=s
Damage Findings Based Upon Sufficient Evidence?

Dr.
Kreit challenges the legal and factual sufficiency of Young=s damage evidence.  A trial
court=s factual
determinations are reviewed for legal sufficiency under the same standards used
to review a jury=s
verdict.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991).  In considering a legal sufficiency challenge, we review all the
evidence in the light most favorable to the prevailing party, indulging every
inference in their favor.  City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005).  In reviewing a factual sufficiency challenge, we consider all of
the evidence and uphold the finding unless the evidence is too weak to support
it or the finding is so against the overwhelming weight of the evidence as to
be manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986).

1.  Mental Pain and Anguish.








Dr.
Kreit argues first that the evidence is legally and factually insufficient to
support the trial court=s
$150,000 mental anguish award.  Young responds that Dr. Kreit waived this issue
because the trial court=s
mental anguish award and pain and suffering awards were combined and because
Dr. Kreit did not challenge her pain and suffering damages.[16] 
Dr. Kreit responds that it was unnecessary to do so because the trial court did
not award physical pain and suffering damages.  At the conclusion of the trial,
the court announced that it was awarding mental anguish damages of $150,000. 
The court did not mention any pain and suffering damages.  The final judgment
awarded Young $150,000 for past and future mental anguish and pain and
suffering.  Dr. Kreit requested findings of fact, and the trial court made the
following damage findings:

The
Court found damages of $104,527.80 for past and future medical, $138,112 for
past and future lost wages, $1,600 for fraud and $150,000 for mental pain and
suffering, past and future.

 

The trial court=s oral findings and the
written findings of fact both confirm that it did not award any physical pain
and suffering damages but, instead, found only mental anguish damages. 
Consequently, Dr. Kreit is correct, and he has not waived this issue.

The
Texas Supreme Court held in Parkway Co. v. Woodruff, 901 S.W.2d 434, 444
(Tex. 1995), that mental anguish awards will pass a legal sufficiency review if
evidence is presented describing Athe
nature, duration, and severity of their mental anguish, thus establishing a
substantial disruption in the plaintiffs=
daily routine.@  Most
recently, the court held that Asome
types of disturbing or shocking injuries have been found sufficient to support
an inference that the injury was accompanied by mental anguish.@  Fifth Club, Inc. v.
Ramirez, 196 S.W.3d 788, 797 (Tex. 2006).

In
Fifth Club, the plaintiff was beaten at a nightclub by a security
officer.  His head was slammed against a concrete wall, knocking him
unconscious and fracturing his skull.  At trial, he and his wife testified that
he was still depressed, humiliated, non-communicative, unable to sleep, and
angry; that he continued to have headaches and nightmares; and that his daily activities
and his relationships with his wife and daughter continued to be detrimentally
affected almost two years after the incident.  He also presented evidence of
the severity of his beating, the significant injuries he suffered to his head
and body, his loss of consciousness, and his hospital visits.  Id.  The
court held that this was sufficient to support an award of $20,000 for future
mental anguish.

Young
was awarded $150,000.  Her entire mental anguish testimony was as follows:

Q.        Okay. 
Linda, also, you have a claim for mental anguish and pain and suffering; is
that correct?

 

A.        Yes,
sir.  

 

Q.        Both
since the time of the accident and into the future; is that correct?

 

A.        Yes,
sir.








 

Q.        And you are asking the Court to award you $250,000 for that
claim; is that correct?

 

A.        Yes, sir.

 

Young equates
her physical injuries with those suffered by the plaintiff in Fifth Club. 
She asks us to consider her mental anguish testimony in conjunction with her
testimony that she injured her neck and back when she fell, that she received
treatment from Dr. Kreit but did not improve, that four years after the
accident she was taking $60 worth of pain medication monthly, and that she
could not work or do many other things.

Fifth
Club does not stand for the proposition that mental anguish damages can be
inferred in all personal injury cases.  The court=s
holding was premised on the existence of a disturbing or shocking injury.  196
S.W.3d at 797.  Falling off of an office chair is not the type of shocking or
disturbing injury that we believe the supreme court had in mind.  Nor does
Young=s testimony
distinguish a mental anguish claim from physical injuries such as pain and suffering
or other forms of damage such as lost earnings and lost earning capacity.  Cf.
Jackson v. Gutierrez, 77 S.W.3d 898, 903 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (mental
anguish must be distinguished from pain and suffering).  Finally, not only must
the factfinder have sufficient evidence to determine that mental anguish
exists, it must also have sufficient evidence to justify the amount awarded.  Bentley v.
Bunton, 94 S.W.3d 561, 606 (Tex. 2002).  Young provided the trial court
with no evidence of the nature, severity, or degree of any mental anguish
injury and, thus, no evidence with which to evaluate her claim.

Even
if we are incorrect and there was some evidence to support a mental anguish
claim, when all the evidence is considered, that evidence is factually
insufficient.  There was evidence that, in addition to her fall off of Dr.
Kreit=s office chair,
Young had fallen at a restaurant two weeks previously, that she had been
involved in an automobile accident where she injured her neck and was taken to
the hospital, that she had advanced diabetes and diabetic neuropathy, and that
she suffered from cardiac problems.  This multiplicity of other potential
health issues, compared to her conclusory mental anguish testimony, makes the
trial court=s award of
$150,000 against the great weight and preponderance of the evidence.  Dr. Kreit=s fourth issue is
sustained.








Ordinarily,
a finding of legally insufficient evidence would require that we reverse and
render.  Dr. Kreit=s
prayer, however, asks this court to reverse and remand for a new trial.  We
realize that our authority is not limited by this request and that we may still
reverse and render.  See, e.g., Kaspar v. Thorne, 755 S.W.2d 151, 156-57
(Tex. App.CDallas
1988, no writ).  We recognize also that Tex.
R. App. P. 43.3 expresses a preference for rendition in instances such
as this.  That rule, however, provides that a remand is still appropriate when
required by the interests of justice.  We believe that such a situation is
present here.

First,
Dr. Kreit=s own
conduct, as outlined in this opinion, has interfered with the development of
this case.  Secondly, the record does not indicate that Young suffered no
mental anguish but that she failed to adequately develop it.  Finally, remand
is consistent with Dr. Kreit=s
requested relief.  Consequently, the trial court=s
mental anguish award is reversed and is remanded for a new trial.

2.  Lost Wages.

Dr.
Kreit next argues that the evidence is legally and factually insufficient to
support the trial court=s
award of $138,112 for past and future lost wages.  Young testified as follows:

Q.        Okay. 
Now, how old were you at the time this accident occurred, the injury occured?

 

A.        57.

 

Q.        Okay. 
And how much were you making, or how were you being paid when you were working
for Dr. Kreit?

 

A.        On
an hourly basis.

 

Q.        How
much?

 

A.        $8.30
an hour.

 

Q.        And
was your intentions to work through age 65?

 

A.        At
least.

 

Q.        Okay. 
So if you calculate your lost wages, both past and future, would that figure be
$138,112 through age 65?

 

A.        Yes,
sir.








On cross-examination, she
testified:

 

Q.        Okay.  And that B
did it show anything other than the carpal tunnel that you still have?

 

A.        Yes, sir.  That showed a bulging disk, a neck injury, lower
spine injury.  I have had injections put into my spine.  I=m fixing to have one put
into my neck here in a couple of weeks.  I have been on a lot of medication.  I
have --  due to the fact that I can=t
do a lot of things that I used to do.

 

Q.        Well --

 

A.        One thing is working.  I love my job.  I was very loyal to you
all.

 

Dr.
Kreit argues that this is insufficient because there was no evidence that Young
was not working at the time of trial, was unable to work, or would be unable to
return to work.  Considering this evidence in a light most favorable to Young,
it is some evidence that she was not working at the time of trial.  Young
testified without objection that she would need future surgery.  That is some
evidence that she will miss more work in the future.  The trial court,
therefore, had evidence of past and future lost earnings.  The trial court=s award, however, presumes
that Young=s fall will
prevent her from ever returning to work.  There was no evidence that Young is
permanently disabled.  The absence of any evidence to support this assumption
means that the lost wages award lacks factually sufficient evidence.  Dr. Kreit=s fifth issue is
sustained.  The trial court=s
lost wages award is reversed, and this issue is remanded for a new trial.

3.  Medical Expenses.

The
trial court awarded Young $104,527.80 for past and future medical expenses. 
Young testified that she received a bill from Dr. Kreit that was over $3,000,
that she was taking medication costing approximately $60 per month, that she
had been told that she would need future surgery, and that the total cost of
her medical expenses, including surgery, would be $104,527.80.  Dr. Lynn Lanier
Pearson testified by deposition.  He said that Young suffered from a C-6
neuropathy and spinal stenosis at L-4/L-5.  He also testified that there is a Agood chance@ that she will need neck
and back surgery.








Dr.
Kreit argues that this testimony is legally and factually insufficient.  To
recover for past medical expenses, a plaintiff must prove the actual amount of
the expenses incurred and that those expenses were reasonable and necessary. See
Quaker Petroleum Chems. Co. v. Waldrop, 75 S.W.3d 549, 553-54 (Tex. App.CSan Antonio 2002, no
pet.).  A plaintiff can prove reasonableness and necessity of past medical
expenses by either (1) presenting expert testimony on the issues of
reasonableness and necessity or (2) presenting an affidavit prepared and filed
in compliance with Tex. Civ. Prac. &
Rem. Code Ann. '
18.001 (Vernon Supp. 2007).

The
award of future medical expenses lies within the discretion of the factfinder.
City of San Antonio v. Vela, 762 S.W.2d 314, 321 (Tex. App.CSan Antonio 1988, writ
denied). To sustain an award of future medical expenses, the claimant must
present evidence to establish that, in all reasonable probability, future
medical care will be required and to establish the reasonable cost of that
care.  Whole Foods Mkt. Sw., L.P. v. Tijerina, 979 S.W.2d 768, 781 (Tex.
App.CHouston [14th
Dist.] 1998, pet. denied). Although the preferred practice for establishing
future medical costs is through expert medical testimony, there is no
requirement that the claimant establish such costs through expert testimony. Id.
Because no precise evidence is required, the factfinder may award future
medical damages based upon the nature of the injury, the medical care rendered
prior to trial, and the condition of the injured party at the time of trial. Vela,
762 S.W.2d at 321.

Dr.
Pearson was asked:

Q.        And
did these conditions in her back and her neck did they become symptomatic from
your conversations with Ms. Young that correlated to the fall out of the chair?

 

A.        Yes.

 

Q.        Since
you have taken conservative treatment and care of Ms. Young, has it come to
your conclusion that surgery most likely will be necessary?

 

A.        Yes. 
There is a good chance that it will be needed.

 

Q.        And
what type of procedures would be done on her neck and lower back?

 

A.        On
the neck it would be a cervical discectomy with an anterior cervical fusion.

 

Q.        What
about lower back?

 








A.        Low
back, I feel she may respond with epidural steroids; or if surgery is done, it
will be a decompression of the posterior elements of the lumbar spine.

 

Dr. Kreit
complains that this testimony is insufficient because Dr. Pearson said there
was a Agood chance@ surgery would be necessary
and because he prefaced his decompression testimony by saying Aif surgery is done.@  Dr. Kreit contends that
this testimony does not establish that in reasonable probability future surgery
will be necessary.  We disagree.  Dr. Pearson=s
testimony must be considered in connection with the question.  He was asked if
surgery Amost likely
will be necessary.@ 
His immediate response was, AYes.@  His subsequent statement
that there is a good chance surgery will be required is not inconsistent with
this initial response.  Similarly, the fact that he wanted to try an epidural
steroid before operating on her lower back does not preclude an award for the
costs of a lower back surgery. Attempting a more conservative treatment first
because Young might respond is simply good medicine and does not detract
from the doctor=s
earlier testimony. The trial court could also consider the fact that four years
of conservative treatment had not alleviated Young=s condition.  Dr. Pearson=s testimony is legally and
factually sufficient evidence that Young will need neck and back surgery.

Dr.
Pearson testified that each surgery will cost approximately $6,500 for the
surgeon and $30,000 to $40,000 for the hospital.  Young testified that she had
received a bill from Dr. Kreit for $3,000 and that she was spending $60 per
month for medication.  There is legally and factually sufficient evidence to
support the trial court=s
award of $104,527.80 in past and future medical expenses.  Dr. Kreit=s sixth issue is overruled.

                                                         IV.
Holding

The
judgment of the trial court is affirmed in part and reversed and remanded in
part.  That portion of the judgment finding Dr. Kreit liable for a negligence
cause of action and awarding Young past and future medical expenses of
$104,527.80 is affirmed.  That portion of the judgment finding Dr. Kreit
liable for fraud and awarding Young fraud damages, past and future lost wages,
and past and future mental anguish is reversed; and these issues are remanded
for a new trial.

 

 

February 22, 2008                                                                   RICK
STRANGE

Panel consists of:  Wright, C.J.,                                                 JUSTICE

McCall, J., and Strange, J.









     [1]Someone other than
Dr. Kreit signed the green card.





     [2]This was the trial
court=s cause number.





     [3]The Thirteenth
Amendment provides:

Section 1.  Neither slavery nor involuntary servitude,
except as punishment for crime whereof the party shall have been duly
convicted, shall exist within the United States, or any place subject to their
jurisdiction.

Section 2.  Congress shall have power to enforce this article by
appropriate legislation.





     [4]The default
judgment reads:

 

Lindsey B. Whisenhant has failed to assert any claim to
Camil Ibrahim by proving the certificate of search in the district court to be
faulty or fraudulent within the twenty days stipulated.  As stipulated on the
summons properly formed and served[:]

 

You are hereby summoned and required to serve upon
plaintiff, whose address is: Camil Ibrahim; 203 North College; Cleveland,
Texas. [77327] AND FILE WITH THE CLERK OF THE COURT an answer to the complaint
which is herewith served upon you, within twenty 20 days of service of this
summons upon you, exclusive of the day of service.  If you fail to do so,
judgment by default will be taken against you for the relief demanded in the
complaint.

 

[D]efault judgment is hereby entered and the injunctive
relief sought in the counterclaim is awarded to Camil Ibrahim.  Lindsey B.
Whisenhant is by law to forfeit seizure upon Camil Ibrahim=s property and person.  If Lindsey B. Whisenhant fails
to do so, a certificate of exigent circumstances will issue calling for Lindsey
B. Whisenhant=s arrest in the cognizance of the State Department and
Speaker of the House.

 

Camil Ibrahim

 

Date: 03/12/2004





     [5]Between June 18 and
September 14, the district clerk received four letters from Camil Ibrahim. 
Each letter forwarded discovery pleadings and correspondence he had received in
connection with this case.  The notation Arefused
for cause@ was written on each page of the attachments.  Dr.
Kreit also filed federal lawsuits against Young and her trial counsel, a state court
suit against Young in Polk County, a grievance against Young=s trial counsel, and a complaint against them with the
United States Department of Health and Human Services.





     [6]Following oral argument,
the parties filed post-submission briefs.  We have considered the additional
legal authority provided in those briefs.  The briefs also contain matters not
previously briefed.  We have not considered any new issues raised in the
post-submission briefs.





     [7]This rule provides:

Any partnership, unincorporated
association, private corporation, or individual doing business under an assumed
name may sue or be sued in its partnership, assumed or common name for the
purpose of enforcing for or against it a substantive right, but on a motion by
any party or on the court=s own motion the true name may be substituted.





     [8]The court also
referred to two common-law defenses to limitations: misidentification and
misnomer.  Misidentification arises when two separate legal entities exist and
a plaintiff mistakenly sues the entity with a name similar to that of the
correct entity.  Misnomer arises when a plaintiff sues the correct entity but
misnames it.  Chilkewitz, 22 S.W.3d at 828.  The court did not consider
either defense because it found Rule 28 controlling.  Because Young does not
rely upon either defense, we need not consider them as well.





     [9]See Baker v.
Mansanto Co., 111 S.W.3d 158, 161 (Tex. 2003) (general appearance waives
any defect in the manner of service). 





     [10]When she filed her
amended petition, she merely asked that service be sent to a AP O Box.@





    
[11]For example, the
counterclaim attached to Dr. Kreit=s
March 2, 2004 letter to the district clerk states, AComes now
Camil Ibrahim of the Kreit[1] family.@ 
The footnote attached to this statement states, ACamil=s native cultural custom is forfeited to the Western
custom of >first= and >middle= names composing
the full true name.  >Ibrahim= is actually the
name of Camil=s father.@





    
[12]In his motion to
dismiss for failure to state a claim upon which relief can be granted, Dr.
Kreit argued that the fraud allegation against him for failing to acquire
insurance was false because he had acquired insurance from AFLAC.  Dr. Kreit
attached a cancelled check to AFLAC from Camil Kreit M.D. P.A. in support of
this contention.





     [13]The letter stated:

 

This correspondence certifies that I (Gilbert Smith)
have received and signed for the citation for case number 43,846, Rae Lippmann
v. Gilbert Smith, issued by the Honorable District Court 75th Judicial District
of Libert (sic) County, Texas at the Court House of said County in Liberty,
Texas on the 31st day of March of 1989.

 

Lippmann, 826
S.W.2d at 137.  The defendant signed the letter and provided his current
mailing address immediately below his signature.





    
[14]Dr. Kreit also
suggests that the supreme court utilizes a different test for an answer in
non-default judgment situations, citing Exito Electronics Co., Ltd. v. Trejo,
142 S.W.3d 302 (Tex. 2004).  In this case the court held that a Rule 11
agreement filed with the trial court that extended the time to file an answer
did not waive a special appearance.  Id. at 306.  The decision was
governed by Texas=s Adue-order-of-pleading@
requirement B a situation not present here.  The court did not cite
or discuss Lippmann, and nothing in that opinion suggests to us that the
court intended to modify the Lippmann tests in other contexts.





     [15]The San Antonio
court=s opinion provides no guidance for a plaintiff caught
in this situation.  We can envision no action on the plaintiff=s part that would provide the defendant with greater
due process protection in that situation than it would receive if a plaintiff
moved for summary judgment and provided the notice required by the Rules of
Civil Procedure.  Instead, it appears that a recalcitrant party will actually
have an incentive to engage in uncooperative behavior so as to deprive the
plaintiff of the opportunity to move for summary judgment.  We realize that
trial courts have broad discretion to manage their dockets and that they can
impose appropriate sanctions, but we do not believe that requiring plaintiffs
to move for sanctions before they can file a motion for summary judgment is
sound policy.

 

We also question what realistic options a
trial court has in this situation and what additional burdens those options
will impose upon the court and the plaintiff.  For example, if the trial court
orders a defendant to file a sufficient answer, this order must include an Aor else.@  If the
sanction is that the original document will be treated as an answer and the
plaintiff allowed to proceed accordingly, the trial court may run afoul of Hock=s ultimate
holding, that a trial court cannot grant a summary judgment if it first finds
that a pleading is not an answer.  If the trial court=s sanction is to strike the original filing, that would
arguably require it to comply with all of the procedural requirements of
imposing a death penalty sanction.





    
[16]The general rule
is that an appellant who seeks to challenge a multi-element damage award on
appeal must address each element and show the evidence is insufficient to
support the entire award.  SunBridge Healthcare Corp. v. Penny, 160
S.W.3d 230, 248 (Tex. App.CTexarkana 2005, no pet.).  If an appellant fails to
address an element of damages, the appellant waives the sufficiency challenge. 
Id.